Phoebe THOMPSON, Dean Ecoff, and Marcia E. Wade, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

State of COLORADO, Defendant.

No. 96–S–1791.

United States District Court, D. Colorado.

Dec. 22, 1998.

Glen F. Gordon, John A. Purvis, William R. Gray, Boulder, CO.

J. Davis Connor, Stephen R. Senn, Peterson & Myers, PA, Lakeland, FL.

Robert Joseph Antonello, Robert G. Fegers, Antonello, Fegers & CEA, Winter Haven, FL.

Paul Farley, Deputy Attorney General, State Services Section.

## ORDER

SPARR, District Judge.

THIS MATTER comes before the court on the Recommendation of United States Magistrate Judge Coan that Plaintiffs' Motion for Summary Judgment be granted and Defendant's Motion for Summary Judgment be denied. Defendant has filed timely objections to the Recommendation. The court must make a *de novo* determination of those portions of the proposed findings or recom-

mendations to which specific objection is made. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b).

The court has conducted a *de novo* review of the motions (filed December 2, 1996), the Responses (filed December 30, 1996), the Supplements and Supplemental Responses (filed March 27, 1997, April 23, 1997, April 25, 1997, May 9, 1997, August 1, 1997, August 20, 1997, and August 29, 1997), the Recommendation (filed November 25, 1997), Defendant's Objections (filed December 9, 1997), Plaintiffs' Response (filed December 22, 1997), the Supplements and Supplemental Authority (filed April 10, 1998, April 13, 1998, June 15, 1998, July 23, 1998, September 8, 1998, and November 5, 1998), the entire case file, the exhibits, the extensive applicable law, and the excellent arguments presented at the hearing held December 18, 1998, and is sufficiently advised in the premises. The court hereby incorporates by reference the record of the hearing held December 18, 1998. After conducting such *de novo* review, the court agrees with the Magistrate Judge's Recommendation that Plaintiffs' motion must be granted and Defendant's motion must be denied. Accordingly, IT IS ORDERED:

1. Defendant's Motion for Summary Judgment (filed December 2, 1996) is DENIED.

2. Plaintiffs' Motion for Summary Judgment (filed December 2, 1996) is GRANTED. Summary judgment shall hereby enter in favor of Plaintiffs and against Defendant on the First Claim for Relief. Defendant is hereby enjoined from implementing Colo. Rev.Stat. § 42–3–121(2)(d) (1998) to require payment of a fee for removable parking placards described in Colo.Rev.Stat. § 42–3–121(2)(a)(II) and issued pursuant to Colo. Rev.Stat. § 42–3–121(2)(b).

3. Because the Plaintiffs' Motion for Class Certification (filed September 18, 1998) is unopposed, the parties shall, as soon as practicable, submit a stipulated proposed order for class certification.

4. The parties shall, as soon as practicable, submit a stipulated schedule for the filing of briefs regarding the Second Claim for Relief for reimbursement of past fees collected, prejudgment interest, attorneys' fees, and costs.

5. The court will set a further hearing on the remaining matters upon notice to the parties.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

COAN, United States Magistrate Judge.

This matter is before the court on cross motions for summary judgment. Defendant's Motion for Summary Judgment and Plaintiffs' Motion for Summary Judgment were both filed December 2, 1996. On February 6, 1997 an Order of Reference under 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72 referred the motions to the undersigned United States Magistrate Judge for a recommendation. The motions have been fully briefed. The court has determined that oral argument would not assist the recommendation. For the reasons set forth below, the court recommends that Plaintiffs' Motion for Summary Judgment be granted and that Defendant's Motion for Summary Judgment be denied.

### I. Background

Plaintiffs' complaint seeks relief on behalf of a putative class of individuals who qualify for disability parking placards purchased from the State of Colorado. Plaintiffs claim that the fee charged by the State for the parking placards under COLO.REV.STAT. § 42–3–121, "Parking Privileges for Persons with Disabilities", violates Title II of the Americans with Disabilities Act of 1990 ("Act"). The parties have stipulated that the plaintiffs qualify for disabled parking privileges under COLO.REV.STAT. § 42–3–121. *See* Stipulations filed November 22, 1996, ¶ 7. Defendant does not dispute that the plaintiffs are qualified individuals with disabilities under 42 U.S.C. § 12131(2).

### II. Standard of Review

The purpose of summary judgment is to determine whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Summary judgment is proper under Fed.R.Civ.P. 56(c) when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affida-

vits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The parties agree that there are no genuine issues of material fact in dispute for purposes of resolving the motions for summary judgment. Accordingly, the court will determine, as a matter of law, whether the fee charged by the State of Colorado for disabled parking placards violates Title II of the ADA.

## III. Legal Analysis

The Colorado General Assembly has adopted provisions which authorize certain parking privileges for persons with disabilities. COLO.REV.STAT. § 42–3–121 (1996 Cum.Supp.). A disabled person may apply to the Department of Motor Vehicles ("DMV") for distinguishing license plates to be displayed on a motor vehicle owned by that person, and may also apply for a removable parking placard which can be placed in any motor vehicle used to transport the disabled person. § 42–3–121(2)(a)(I) and (II). The statute directs the DMV to provide the distinguishing license plates at the same cost as standard plates. § 42–3–121(2)(a)(I). The statute further authorizes the DMV to assess a fee for a removable parking placard to cover the State's cost in issuing the placard. § 42–3–121(2)(d).

Defendant moves for summary judgment on the grounds that regulations promulgated by the Department of Transportation ("DOT"), rather than Title II of the ADA and its implementing regulations, govern parking for the disabled and that the nominal fee charged by the State for the parking placards is in accordance with DOT regulations. Defendant argues that under principles of statutory construction, the DOT regulations govern parking for the disabled as those regulations pertain specifically to handicap parking while Title II more generally prohibits disability discrimination by public entities. Defendant contends that because the DOT regulations do not expressly require the State to assume the cost of the parking placards, the fees charged by the State under COLO.REV.STAT. § 42–3–121, to compen-

sate the State for the cost of each parking placard, are lawful.

Defendant alternatively argues that if the court finds that the fee charged by the State for parking placards violates Title II of the ADA, summary judgment for defendant is appropriate because Colorado is immune from suit under the Eleventh Amendment, and, because applying the mandates of Title II against the State is a violation of the Tenth Amendment.

Plaintiffs move for summary judgment on the ground that the parking placard fee charged by the State clearly violates the Department of Justice ("DOJ") regulations implementing Title II of the ADA which prohibit the State from charging disabled persons for the cost of ADA compliance measures. Plaintiff argues that Title II of the ADA is a comprehensive statute covering all areas of disability discrimination; thus, to the extent that the DOT regulations are not consistent with the mandates of Title II of the ADA and its implementing regulations, the ADA is the controlling law. Plaintiff further maintains that the States do not enjoy Eleventh or Tenth Amendment immunity from suit under Title II of the ADA as Congress has unequivocally and properly waived those immunities in the statute.

A. *Does the Colorado Statute Violate Title II of the ADA*

1. *Does Title II of the ADA govern parking for the disabled?*

The parties disagree about whether the DOT regulations setting forth a "Uniform System for Parking for Persons with Disabilities", 23 C.F.R. § 1235 (March 11, 1991), or Title II and its implementing regulations published by the DOJ, 28 C.F.R. § 35.130 (July 26, 1991), govern the issuance of parking placards for the disabled.

***Title II of the ADA and its implementing regulations***

The ADA became effective on January 26, 1992. Title II of the ADA, at 42 U.S.C. § 12132, states:

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be ex-

cluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

Congress directed the DOJ to promulgate regulations for the implementation of Title II which are contained in 28 C.F.R. § 35.130. 42 U.S.C. § 12134(a). The Title II implementing regulations state, in relevant part:

A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability—

Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level as achievement as that provided to others;

28 C.F.R. § 35.130(b)(1)(iii).

A public entity may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the cost of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part.

28 C.F.R. § 35.130(f).

### *DOT regulations*

On November 9, 1988, Congress enacted Public Law 100–641, 102 Stat. 3335, which states:

Sec. 3. Handicapped Parking System

(a) Regulations.—— Not later than the 180th day following the date of the enactment of this Act, the Secretary of Transportation shall issue regulations—

(1) which establish a uniform system for handicapped parking designed to enhance the safety of handicapped individuals, and

(2) which encourage adoption of such system by all the States. In issuing such regulations, the Secretary shall consult the States.

Pursuant to Pub. Law 100–641, the DOT has published the following regulations, at 23 C.F.R. § 1235.3 (March 11, 1991), to "provide guidelines to States for the establishment of a uniform system for handicapped parking for persons with disabilities to enhance access and the safety of persons with disabilities which limit or impair the ability to walk" (23 C.F.R. § 1235.1):

(a) Upon application of a person with a disability which limits or impairs the ability to walk, each State shall issue special license plates for the vehicle which is registered in the applicant's name. The initial application shall be accompanied by the certification of a licensed physician that the applicant meets the § 1235.2(b) definition of persons with disabilities which limit or impair the ability to walk. The issuance of a special license plate shall not preclude the issuance of a removable windshield placard.

. . .

(c) The fee for the issuance of a special license plate shall not exceed the fee charged for a similar license plate for the same class vehicle.

Defendant argues that because neither Title II of the ADA nor the DOJ regulations specifically address parking regulations for the disabled, the DOT regulations regarding handicapped parking govern over the more general prohibitions against disability discrimination found in Title II and its implementing regulations. The court disagrees.

■ The court initially notes that the normal rules of statutory construction do not apply in this case because the two statutes do not contain conflicting mandatory directives to the states. Title II of the ADA generally prohibits any form of discrimination against disabled persons by a public entity. Title II's implementing regulations reiterate Title II's prohibition against discrimination by a public entity and set forth numerous examples of prohibited conduct. *See* 28 C.F.R. § 35.130. The ADA directs the Attorney General to publish regulations that implement Title II. 42 U.S.C. § 12134. Because Congress expressly delegated authority to construe Title II by regulations, the regulations promulgated under Title II must be given controlling weight "unless they are arbitrary, capricious or contrary to the statute." *United States v. Morton,* 467 U.S. 822, 834, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984). Thus,

Title II's prohibition is broad enough to encompass discrimination in parking or public building access.

In contrast, Pub.Law 100–641, enacted prior to the effective date of the ADA, does not *require* the states to comply with the uniform handicapped parking guidelines promulgated by the DOT, but rather "encourages" compliance with those guidelines. Nevertheless, neither Pub.Law 100–641, nor the DOT guidelines, expressly authorize the states to charge a fee for the issuance of removable parking placards. Instead, the statute and guidelines are silent on the subject.

■ Accordingly, the court finds that the fees charged by Colorado for removable windshield placards are within the scope of Title II of the ADA. The court's inquiry therefore moves to whether the fee charged to disabled persons for the parking placards is an unlawful "surcharge" to cover the cost of a measure that is necessary to provide the nondiscriminatory treatment required by Title II. 28 U.S.C. § 35.130(f).

### 2. Does the parking placard fee violate Title II of the ADA?

Defendant argues that the fee charged by the Colorado DMV for removable parking placards, pursuant to COLO.REV.STAT. § 42–3–121, does not violate Title II of the ADA because the parking placard is not a measure required to provide disabled persons with the nondiscriminatory treatment prescribed by the ADA or its implementing regulations. Defendant emphasizes that the "service" provided by the State under § 42–3–121 is disabled parking privileges. The State has not conditioned that service on the payment of a removable parking placard fee because the State has authorized the issuance of distinguishing license plates to disabled persons at the same cost as other plates are provided to non disabled persons. The removable parking placards are merely an alternative option to the distinguishing license plates and are therefore not *required* by the ADA; thus, the State is authorized to

assess a small fee to compensate it for its costs in issuing the placards.

Plaintiffs respond that disabled persons realistically cannot enjoy the same parking privileges as non disabled persons unless they obtain a removable parking placard; thus, the removable placard is the only means by which disabled persons are afforded the equal access to public buildings enjoyed by non disabled persons. Plaintiffs emphasize that the distinguishing license plates are restrictive in that they must be used on a car owned by the disabled person; in contrast, the removable parking placard can be used in any car in which a disabled person is being transported. Because many disabled persons who require special parking privileges are unable to drive, and are therefore unlikely to own a motor vehicle, the removable parking placard is the necessary means by which disabled persons are afforded the same access to public accommodations as is enjoyed by non disabled persons. The State cannot condition a disabled person's right to equal access upon payment of a fee.[1] *See* 28 C.F.R. § 35.130(b)(1)(iii) and (f).

The Title II implementing regulations prohibit the State from placing a surcharge on disabled persons to cover the cost of measures that are necessary to provide disabled persons with the nondiscriminatory treatment mandated by the ADA. 28 C.F.R. § 35.130(f).

The regulations promulgated under Title III of the ADA[2] require places of public accommodation to set aside parking places for persons with disabilities in order to provide disabled persons with easier access to the facilities. *See* 28 C.F.R. 36.304(a) and (b)(18); ADA Accessibility Guidelines for Buildings and Facilities, Appendix A to 28 C.F.R. Ch. I, Pt. 36, at § 4.6.2. Thus, accessible parking for disabled persons is a compliance measure required by the ADA. The State of Colorado has determined that the purpose of providing special parking places for disabled persons would be defeated if non

1. Plaintiffs do not challenge the State's imposition of a fee for the issuance of distinguishing license plates because that fee is assessed in the same manner as the State assesses license fees against non disabled vehicle owners.

2. Title III of the ADA prohibits discrimination on the basis of a disability by owners, lessors or operators of private facilities which are frequented by the public. 42 U.S.C. § 12182(a).

disabled persons were allowed to use those spaces. To ensure that only disabled persons use the parking spaces designated for them, the State has made it illegal for non disabled persons to park in handicapped parking spaces and has provided a means by which vehicles transporting disabled persons can be readily identified. COLO.REV. STAT. § 42–4–1208(3) and (5). The required means of identification is the display of either distinguishing license plates or a removable windshield placard on the vehicle. Although disabled persons who own and drive vehicles may purchase the distinguishing license plates at the same cost as license plates issued to a non disabled person, those disabled persons who do not own a vehicle or who do not drive must pay a fee not required of non disabled persons in order to take advantage of handicapped parking spaces.

The Title II implementing regulations prohibit discrimination on the basis of a disability against disabled persons generally, *as well as groups of disabled persons.* 28 C.F.R. § 35.130(f). Defendant's argument that "[a]ny person with a disability may avoid paying the fee for a placard simply by applying for distinguishing license plates instead" (Brief in Support of Defendant's Motion for Summary Judgment, p. 12) ignores the crucial fact that distinguishing license plates are of no use to many disabled persons.

■ In order to take advantage of handicapped parking in the State of Colorado, groups of disabled persons who do not own a vehicle, or who are driven by others, or who rent cars, have no choice but to use the removable placard to identify the vehicles used when parking in designated spaces. Thus, for certain groups of disabled persons, the use of the removable placard provides the only means of access to disabled parking spaces. Without the placard, these groups of disabled persons would be precluded from parking in spaces mandated for their use by the ADA. The State of Colorado has therefore conditioned the right of certain *groups of disabled persons* to handicapped parking upon the purchase of removable placards.

The court finds that the fee imposed by the State to cover the cost of the removable placard is an illegal "surcharge" as contemplated by 28 C.F.R. § 35.130(f). The Title II implementing regulations prohibit the State from placing a surcharge on a disabled person or a group of disabled persons to cover the cost of access to disabled parking spaces because disabled parking spaces are a compliance measure which is required by the ADA. 28 C.F.R. § 35 .130(f). The State's imposition of a removable parking placard fee solely upon disabled persons or groups of disabled persons, as a condition to their use of handicapped parking spaces, is a violation of Title II of the ADA.

**B.** *Are Plaintiffs' Title II Claims Barred by the Eleventh Amendment?*

Defendant argues that to the extent the court finds that the fee charged by the State to cover the cost of issuing a removable parking placard violates Title II of the ADA, plaintiffs' ADA claim is barred in its entirety by the Eleventh Amendment. Defendant argues that plaintiffs' Title II claim is cognizable only if Congress enacted Title II pursuant to its enforcement powers under § 5 of the Fourteenth Amendment. However, the legislative history of the ADA shows that Title II was enacted pursuant to Congress' powers under the Commerce Clause, powers which do not include the enactment of federal statutes which attempt to regulate the states as regulators.

■ The Eleventh Amendment bars a person from bringing suit against a state in federal court absent the state's consent to suit or absent a valid abrogation of that immunity by Congress.[3] *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996); *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 240–41, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). In *Seminole Tribe,* the Supreme Court adopted a two-part test to determine whether Congress has abrogated a state's Eleventh Amendment immunity: (1) has Congress "unequivocally expresse[d] its in-

---

3. The immunity granted to the states by the Eleventh Amendment is a complete immunity from suit in federal court, regardless of the relief requested. *Seminole Tribe,* 116 S.Ct at 1124 (internal citations omitted).

tent to abrogate the immunity" (internal citation omitted); and (2) has Congress acted "pursuant to a valid exercise of power" (internal citation omitted). 116 S.Ct. at 1123. Under the second prong of the inquiry, the *Seminole* court held that Congress may abrogate a state's Eleventh Amendment immunity only if it acts pursuant to its powers under § 5 of the Fourteenth Amendment. *Id.* at 1125. The Supreme Court over-ruled its earlier plurality decision in *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), which held that Congress may abrogate a state's sovereign immunity in federal legislation enacted pursuant to its powers under the Interstate Commerce Clause, Art. I, § 8, cl. 3. *Seminole* Tribe, 116 S.Ct. at 1128.

Defendant concedes that Congress clearly expressed its intent to abrogate the states' sovereign immunity in enacting Title II of the ADA. *See* Defendant's December 30, 1996 Response brief, p. 5; 42 U.S.C. § 12202.[4] Defendant contends, however, that Title II was not enacted pursuant to a valid exercise of Congressional power under § 5 of the Fourteenth Amendment. Defendant maintains that although Congress expressly stated in the ADA that the legislation was passed pursuant to its powers under § 5 of the Fourteenth Amendment and under the Interstate Commerce Clause,[5] the legislative history of the ADA shows that the statute was enacted solely under the Interstate Commerce Clause; therefore, Congress has not abrogated the states' sovereign immunity and the State of Colorado is not subject to suit in federal court for a violation of Title II.

The court initially notes that Congressional statements as to the basis of federal legislation are not dispositive. The question of whether Congress has acted within, or exceeded, its authority under § 5 of the Fourteenth Amendment in enacting Title II of the ADA must be determined by the judiciary. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176–78, 2 L.Ed. 60 (1803). Thus, the court will review the language of the ADA to determine if Congress' invocation of its § 5 powers as the basis for its enactment of the Act was appropriate.[6]

■ The Fourteenth Amendment, at Section 1, prohibits a State from making or enforcing any law which denies any person within its jurisdiction the equal protection of the laws.[7] Section 5 of the Fourteenth Amendment states: "The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." It is for Congress in the first instance to determine what legislation is needed to enforce the guarantees of the Fourteenth Amendment. *Katzenbach v. Morgan*, 384 U.S. 641, 651, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966). However Congress' powers under § 5 are not limitless, *Oregon v. Mitchell*, 400 U.S. 112, 128, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970). Section 5 grants Congress a "remedial" power to enforce the Equal Protection Clause, but does not grant Congress the power to create substantive rights against the States. *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 2164, 138 L.Ed.2d 624 (1997) ("Congress does not enforce a Constitutional right by changing what that right is."). The line between legislation which enforces a constitutional right and legislation which substantively defines a constitutional right is an important one. Under separation of powers principles, the judiciary, not Congress, defines the substantive rights guaranteed by

---

**4.** 42 U.S.C. § 12202 states: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter . . ."

**5.** 42 U.S.C. § 12101(b)(4) states: "It is the purpose of this chapter . . . to invoke the sweep of Congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities."

**6.** "As a general matter, it is for Congress to determine the method by which it will reach a

decision." *City of Boerne*, 117 S.Ct. at 2170. If legislative intent is clearly expressed in the text of the statute, reference to legislative history is unnecessary. Here, Congress has expressly invoked its powers under § 5 of the Fourteenth Amendment in the body of the ADA; thus, despite defendant's invitation to do so, the court will not concern itself with the legislative history of the statute.

**7.** The other prohibitions set forth in Section 1 of the Fourteenth Amendment are not relevant to a determination of the issue before the court.

the Constitution. *Marbury v. Madison*, 5 U.S. (1 Cranch) at 176–178, 2 L.Ed. 60.

The Supreme Court discussed the delineation between enforcement and substantive legislation in *City of Boerne*, a case which struck down the Religious Freedom Restoration Act of 1993 ("RFRA"), formerly 42 U.S.C. § 2000bb, *et seq.*, as an unauthorized exercise of Congressional power under § 5 of the Fourteenth Amendment. RFRA prohibited the "government" (including the states) from substantially burdening a person's exercise of religion even if the burden resulted from a rule of general applicability unless the government could demonstrate that the burden was to further a compelling governmental interest and was the least restrictive means of furthering that interest. The *City of Boerne* court found that RFRA was not remedial legislation, but rather created substantive rights for persons who felt "substantially burdened" by a state in their exercise of freedom of religion, rights which far exceeded those which the Supreme Court recognized under the Free Exercise Clause in *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990).[8] *Id.*, 117 S.Ct. at 2171. The Supreme Court specifically noted that RFRA was so broad as to ensure its intrusion at every level of government to prohibit official action of all kinds, regardless of subject matter; that RFRA had no termination date or termination mechanism; and that RFRA required the states to demonstrate a compelling governmental interest for a law challenged as substantially burdensome, a test expressly rejected by the Supreme Court in *Smith*. *Id.* at 2170–71.

Defendant relies on *City of Boerne* in arguing that Title II is an invalid exercise of Congressional power under § 5 because Congress has attempted to create substantive rights for disabled persons under the Equal Protection Clause which are greater than those enunciated by the Supreme Court in *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313

(1985). Defendant maintains that while the Supreme Court in *City of Cleburne* found that laws which burdened mentally handicapped persons could be held unconstitutional only if the government failed to show a rational basis for the law, the ADA improperly attempts to elevate the standard of review to one of strict scrutiny.

The Supreme Court's decision in *City of Cleburne* specifically addressed the rights to be afforded the mentally handicapped under the Equal Protection Clause. After noting that the mentally handicapped constituted a class of persons entitled to equal protection under the laws, the Court held that a law which distinguishes between the mentally handicapped and others must bear a rational relationship to a legitimate governmental purpose in order to withstand a constitutional challenge. 473 U.S. at 446, 105 S.Ct. 3249. The Supreme Court has not addressed the specific question of what level of judicial review should be afforded laws which distinguish between a class of disabled persons generally and others. However, the Tenth Circuit Court of Appeals has applied the holding in *City of Cleburne* to disabled persons generally. *See Spragens v. Shalala*, 36 F.3d 947 (1994)(addressing equal protection challenge to social security legislation which afforded blind persons a larger maximum monthly disability payment than was afforded to plaintiff, who suffered from congenital deformity of the joints).

Under *Spragens* and *City of Cleburne*, a state must have a legitimate governmental interest in enacting laws which distinguish between disabled persons and non disabled persons. Thus, to the extent that the ADA *requires* state legislation which distinguishes between disabled and non disabled persons to pass a more rigid level of review to survive a constitutional challenge, Congress' attempt to exercise its Section 5 powers is invalid under *City of Boerne*. Defendant's argument that Congress has attempted to heighten the standard of review to strict scrutiny is based on the "Findings" section of the ADA, 42 U.S.C. § 12101(a), which states:

---

**8.** *Smith* involved a free exercise challenge to a state law of general applicability which criminalized peyote use. The Supreme Court upheld the state law as applied to deny employment benefits to Native American members who lost their jobs because of such use on the ground that neutral, generally applicable laws may be applied to religious practices even when not supported by a compelling governmental interest.

(2) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(5) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion ...

(7) individuals with disabilities are a discrete and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society;

Importantly, the language in 42 U.S.C. § 12101(a) is restricted to the "Findings" section and is not found elsewhere in the ADA. Although the Congressional findings do comport with the criteria set forth by the Supreme Court in *San Antonio Ind. School Dist. v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) as the criteria which have been traditionally considered by the courts in determining whether a class is "suspect",[9] Title II does not mandate that state legislation which distinguishes between disabled persons and others must pass a heightened standard of review under an Equal Protection Clause challenge. Instead, the ADA recognizes, as did the Supreme Court in *City of Cleburne*, that disabled persons are entitled to protection from discrimination on the basis of their disability. The "Findings" section of the ADA merely supports Congress' determination that disability discrimination is existing and widespread and therefore needs to be prevented and remedied. To that end, Title II prohibits the States from arbitrarily discriminating against disabled persons on the basis of their disability.

Thus, in contrast to RFRA, Title II of the ADA does not grant disabled persons greater substantive rights under the Equal Protection Clause than those set forth in *City of Cleburne*.

Defendant argues that Title II improperly attempts to circumvent the level of protection afforded to disabled persons under the Equal Protection Clause, as set forth in *City of Cleburne*, by prohibiting *all* state action which discriminates on the basis of disability, regardless of the legitimate governmental interest that such laws may serve. Defendant's argument was expressly addressed and rejected by the Supreme Court in *Katzenbach v. Morgan*, 384 U.S. at 648–49, 86 S.Ct. 1717:

> a construction of § 5 that would require a judicial determination that the enforcement of the state law precluded by Congress violated the [Fourteenth] Amendment, as a condition of sustaining the congressional enactment, would depreciate both congressional resourcefulness and congressional responsibility for implementing the [Fourteenth] Amendment. It would confine the legislative power in this context to the insignificant role of abrogating only those state laws that the judicial branch was prepared to judge unconstitutional, or of merely informing the judgment of the judiciary by particularizing the "majestic generalities" of § 1 of the Amendment.

Thus, the question before the court is not whether the judiciary would find that the Equal Protection Clause itself nullifies COLO.REV.STAT. § 42–3–121(2)(d), but is rather whether Congress may prohibit the enforcement of the state statute by legislating under § 5 of the Fourteenth Amendment. *Katzenbach*, 384 U.S. at 649, 86 S.Ct. 1717. The Supreme Court has established the following test for determining whether Congressional legislation is properly enacted under section 5 of the Fourteenth Amendment to enforce equal protection rights guaranteed by section 1 of that Amendment: (1) whether

---

**9.** *San Antonio Ind. School Dist.* defines "suspect" class as one which "has been subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian process." 411 U.S. at 28, 93 S.Ct. 1278; *see, also, United States v. Carolene Products*, 304 U.S. 144, 153, n. 4, 58 S.Ct. 778, 82 L.Ed. 1234 (1938)(stating that classes entitled to protection under Equal Protection Clause include "discrete and insular minorities.").

the legislation "may be regarded as an enactment to enforce the Equal Protection Clause"; (2) whether the legislation "is 'plainly adopted to that end' "; and (3) whether the legislation "is not prohibited by but is consistent with 'the letter and spirit of the constitution.' " *Katzenbach*, 384 U.S. at 651, 86 S.Ct. 1717, quoting *McCulloch v. Maryland*, 4 Wheat. 316, 421, 4 L.Ed. 579 (1819). The Supreme Court further clarified the nature of Congress' enforcement powers under Section 5 in *City of Boerne*, 117 S.Ct. at 2164: "There must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end."

■ The court finds that Title II of the ADA is properly regarded as an enactment to enforce the Equal Protection Clause. The Supreme Court in *City of Cleburne* determined that disabled persons are entitled to equal protection under the law and Congress has expressly stated that the purpose of the legislation is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities..." 42 U.S.C. § 12101(b)(1). The court further finds that Title II was plainly enacted to remedy and prohibit arbitrary discriminatory action by the states on the basis of disability. And, the court finds that Title II is consistent with the Constitution in that it does not purport to create a greater (or lesser) level of constitutional protection to disabled persons than that determined by the Supreme Court in *City of Cleburne*.

While the mandates of Title II impose requirements on the states that impact a wide range of official conduct, the purpose of Title II is narrowly tailored to remedying and preventing arbitrary discrimination against disabled persons by the states. Thus, the characteristics of RFRA which the Supreme Court found objectionable in *City of Boerne* are not present in Title II of the ADA.[10]

Accordingly, the court finds, in accordance with *Seminole Tribe*, that Title II of the ADA was enacted pursuant to Congress' Fourteenth Amendment, § 5 enforcement powers; therefore, Congress has properly abrogated the State's sovereign immunity from suit in federal court for alleged violations of Title II of the ADA.

### C. Does Title II of the ADA Violate the Tenth Amendment?

Defendant argues that Title II of the ADA violates the Tenth Amendment because Title II requires the states to regulate on behalf of the federal government and to appropriate state funds toward that end. The court disagrees.

The United States Constitution established a system of "dual sovereignty" between the States and the federal government. *Gregory v. Ashcroft*, 501 U.S. 452, 457, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991). Under the Tenth Amendment, those powers not expressly reserved to the federal government, or prohibited to the states by the Constitution, are retained by the states.

Defendant relies on the Supreme Court's decisions in *New York v.. United States*, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) and *Printz v. United States*, 521 U.S. 98, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) in support of its position that Title II is an unconstitutional infringement upon the State's sovereign authority. In *New York*, the Supreme Court struck down a federal regulatory program which compelled the states to dispose of radioactive waste generated within their borders as an unauthorized Congressional mandate to the states. In *Printz*, the Supreme Court declared unconstitutional provisions of the Brady Act (an amendment to the Gun Control Act of 1968, 18 U.S.C. § 921) which required state law enforcement officers to participate in the administration of a federal regulatory scheme

---

10. Although Title II, like RFRA, has no termination date or termination mechanism, the Supreme Court recognized in *City of Boerne* that the lack of a termination date was not necessarily an indication in all cases that Congress had exceeded its authority under § 5 of the Fourteenth Amendment. *City of Boerne*, 117 S.Ct. at 2170–71. The Supreme Court noted that in

cases such as the one before it, where Congress was attempting to heighten the standard of judicial review for state laws which substantially burdened a person's free exercise of religion, such limitations within the statute itself help to ensure that Congress' means are proportionate to ends legitimate under § 5. *Id.*

in connection with the distribution of firearms by private dealers.

The federal legislation at issue in those cases differs in two important respects from Title II of the ADA. First, the legislation challenged in *New York* and *Printz* was not enacted pursuant to Congress' enforcement powers under § 5 of the Fourteenth Amendment. In *New York*, 505 U.S. at 159–160, 176–177, 112 S.Ct. 2408, the issue was whether Congress had properly acted pursuant to its powers under the Commerce Clause, the Spending Clause (Article I, § 8, cl. 1), or the Supremacy Clause (Article VI, cl. 2). The issue in *Printz*, 117 S.Ct. at 2379, was whether Congress properly acted to regulate the sale of handguns pursuant to its powers under the Commerce Clause.

■ In contrast, Title II was enacted pursuant to Congress' powers under § 5 of the Fourteenth Amendment. It is well established that when Congress acts pursuant to § 5 concerns about interference with a state's sovereign authority are greatly diminished because § 1 of the Fourteenth Amendment is an express limitation on the states' authority. One of the first cases to recognize the limitation on state authority imposed by the Civil War amendments was *Ex parte Virginia*, 100 U.S. 339, 346, 25 L.Ed. 676 (1900), in which the Supreme Court stated:

> [t]he prohibitions of the Fourteenth Amendment are directed to the States, and they are to a degree restrictions of State power. It is these which Congress is empowered to enforce, and to enforce against State action, however put forth, whether that action be executive, legislative, or judicial. Such enforcement is no invasion of State sovereignty. No law can be, which the people of the States have, by the Constitution of the United States, empowered Congress to enact.

*See, also, City of Rome v. United States*, 446 U.S. 156, 179, 100 S.Ct. 1548, 64 L.Ed.2d 119 (1980)(recognizing that Civil War Amendments "were specifically designed as an expansion of federal power and an intrusion on state sovereignty"); *Hodel v. Virginia Sur-*

*face Mining and Rec. Assoc., Inc.*, 452 U.S. 264, 287, n. 28, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981)(noting that principles of federalism do not restrict Congressional power to invade state autonomy when Congress legislates under § 5 because the Fourteenth Amendment was adopted with the specific purpose of limiting state autonomy); *EEOC v. Wyoming*, 460 U.S. 226, 243, n. 18, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983)(reaffirming that when Congress properly exercises its powers under § 5, Congress is not limited by same Tenth Amendment constraints as are present when Congress legislates under the Commerce Clause); *Garcia v. San Antonio Metro. Transit Authority*, 469 U.S. 528, 549, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985)(stating that Fourteenth Amendment "limits the sovereign authority that States otherwise would possess to legislate with respect to their citizens and to conduct their own affairs."); *Gregory*, 501 U.S. at 468, 111 S.Ct. 2395 (noting that the Fourteenth Amendment by its terms "contemplates interference with state authority.").

■ When Congress properly exercises its authority pursuant to an "affirmative Constitutional grant of power" such legislation is "not inconsistent with the Tenth Amendment." *New York*, 505 U.S. at 173–74, 112 S.Ct. 2408. Section 5 of the Fourteenth Amendment is an affirmative grant of constitutional power. *Katzenbach*, 384 U.S. at 650, 86 S.Ct. 1717 ("Correctly viewed, § 5 is a positive grant of legislative power authorizing Congress to exercise its discretion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment.").

The second important difference between Title II of the ADA and the federal regulatory schemes at issue in *Printz* and *New York* is that Title II does not compel states to implement or administer a federal regulatory program to remedy or prevent discrimination on the basis of disability. Rather, Title II of the ADA prohibits the State itself from engaging in discrimination on the basis of disability.[11]

---

11. Because Title II does not attempt to regulate the states as regulators, the court need not address the question of whether Congress may so regulate the states when acting pursuant to its powers under § 5 of the Fourteenth Amendment.

In any event, the answer to that question appears to be "No." "[E]ven where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the

**1238**

Defendant also argues, under *New York,* that Title II is not a law of general applicability because it is specifically directed to conduct by the government; however, Title II cannot be separated out from the other subchapters which together form the ADA. Titles I and III prohibit discrimination by private entities and individuals. Thus, the ADA as a whole prohibits discrimination on the basis of a disability by state and private persons alike.

Because Title II of the ADA was properly enacted pursuant to Congress' § 5 enforcement powers, as set forth in detail in Section III.B., *supra,* and because the ADA does not attempt to regulate the State of Colorado as a regulator, the court finds that Title II of the ADA does not violate the Tenth Amendment.

## IV. Recommendation

For the reasons set forth above, the court recommends that Plaintiffs' Motion for Summary Judgment be granted and that Defendant's Motion for Summary Judgment be denied.

The court recommends that the State of Colorado be enjoined from further implementation of COLO.REV.STAT. § 42–3–121(2)(d) as currently written. As set forth above, the State of Colorado may only impose a fee to cover the cost of issuing removable parking placards if such fees are borne equally by disabled and non disabled persons.

The court further recommends that a deadline be set for motions to certify the plaintiff class. Following resolution of the class certification issue, the court recommends that a hearing be set to determine amount of damages owed to the plaintiffs and to determine plaintiffs' entitlement to attorney's fees under 42 U.S.C. § 12133.

Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation as provided by rules of court. The district court judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made. The district

court judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

---

power directly to compel the State to require or prohibit those acts." *Printz,* 117 S.Ct. at 2379, quoting *New York,* 505 U.S. at 166, 112 S.Ct. 2408.