**Jonathan HICKS, Plaintiff,**

v.

**John J. ARMSTRONG,
et al., Defendants.**

**No.  CIV.A.3:98CV1348AWT.**

United States District Court,
D. Connecticut.

Sept. 30, 1999.

Robert Edward Lancaster, Jerome N. Frank Legal Services Organization, New Haven, CT, for Jonathan Hicks.

Roberta S. Kirkendall, U.S. Dept. of Justice, Civ. Rights Div., Disability Rights, Washington, DC, for U.S.

Terrance M. O'Neill, Attorney General's Office, Hartford, CT, for John J. Armstrong, Edward Arrington, Mary M. Johnson, Frank Kinney, Theresa C. Lantz, David N. Strange, Mark W. Strange, Melvin Wearing.

Thomas W. Ude, Jr., Audrey Claire Kramer, Office of Corp. Counsel, City of New Haven, New Haven, CT, for Nicholas Pastore.

### RULING ON MOTION TO DISMISS

THOMPSON, District Judge.

Plaintiff Jonathan Hicks ("Hicks"), a paraplegic pretrial detainee, has filed a complaint setting forth seventeen claims for relief against John Armstrong (Commissioner of the Connecticut Department of Corrections), Edward Arrington (Former Warden of the Hartford Correctional Center), Mary Johnson (Former Warden of the Corrigan Correctional Institution and Current Warden of the Hartford Correctional Center), Frank Kinney (High Sheriff of New Haven's Sheriff's Department), Theresa Lantz (Warden of the New Haven Correctional Center), David Strange (Warden of the Corrigan Correctional Institution) and Mark Strange (Warden of the MacDougall Correctional Institution) (collectively, the "State Defendants"), as well as Nicholas Pastore (Former Chief of Police for the City of New Haven), Melvin Wearing (Chief of Police for the City of New Haven), Unidentified New Haven Sheriff's Deputies, Unidentified New Haven Police Officers, Unidentified Correctional Personnel at all of the aforementioned institutions and Unidentified Medical Personnel at all of the aforementioned institutions.

The Plaintiff alleges that the Defendants violated Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* (1999) ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.* (1999) ("Rehabilitation Act"), the equal protection clause of the Connecticut Constitution, CONN. CONST. art. I, § 20, *amended by* CONN. CONST. art. XXI (1984), and the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983 (1999).

The State Defendants move to dismiss all claims brought against them, based on (i) sovereign immunity; (ii) the Plaintiff's

failure to allege their personal involvement in any alleged harm; and (iii) assuming all federal claims are dismissed pursuant to (i) and (ii), lack of supplemental jurisdiction over the Plaintiff's Connecticut Constitutional claims.

For the reasons set forth below, the State Defendants' motion to dismiss is being denied.

## I. *Standard of Review*

Dismissal of a complaint pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure* for failure to state a claim upon which relief can be granted is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The task of the court in ruling on a Rule 12(b)(6) motion "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (internal quotations omitted). The court is required to accept as true all factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff. *See Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.1994).

## II. *Factual Allegations*

With the foregoing standard in mind, the court accepts as true the following allegations by the Plaintiff. The Plaintiff, Jonathan Hicks, is an individual with paraplegia who depends on a wheelchair for mobility. He has no functional use of his legs. As a result of his disability, he requires a number of accommodations to fulfill basic life functions. Due to prolonged sitting in his wheelchair, Hicks often develops pressure sores which become infected and ulcerous if not properly treated. For maintenance of personal hygiene and using the toilet, he requires an accessible urinal, shower, and bladder control briefs. In order to disimpact his bowels, he requires lubricant and gloves. Without access to clean linens, body sponges, and an accessible shower, Hicks suffers an exacerbation of his pressure sores.

Despite Hicks' obvious disability, the police officers who arrested Hicks on December 31, 1996 and transported him to the Union Avenue lockup in New Haven made no attempt to accommodate his disability in order to ensure safe transport. Not only did the police van lack a wheelchair lift, but the police officers broke Hick's specially-designed wheelchair when they threw it into the van. The van also lacked safety restraints. Left handcuffed and without support in the back of the van, Hicks could not prevent himself from being thrown back and forth against the sides of the van. The result was that his pressure sores were torn open.

Upon arrival at the police station, Hicks was placed in a desk chair equipped with wheels. His broken wheelchair was not replaced. The desk chair lacked safety restraints, proper cushioning, leg rests, and a mechanism by which he could propel himself forward. The police officers pushed Hicks through the police station with his legs dragging on the ground. Without any safety restraint to keep his body within the chair and without a suitable cushion to protect the pressure sores on his backside, Hicks' condition worsened. After he was processed, Hicks was sent to Yale New Haven Hospital for treatment of a pressure sore which had developed into an open wound.

Upon his return to the police station, Hicks was placed in a holding cell that was not accessible to a wheelchair. For three days, he remained in the cell with no access to supplies for using the toilet or an accessible shower. He was given a carton to urinate in and was forced to lie in his own feces.

After his arraignment, Hicks was held as a pre-trial detainee for almost seven months in various state correctional facilities operated by the State Defendants. Over the course of his pre-trial detention, he suffered extreme physical and emotion-

al deprivations largely as a result of the State Defendants' failure to accommodate his disability.

The indignities and harm he suffered include lack of access to a shower, inaccessible toilet facilities, disregard for his basic hygienic needs and inadequate medical care. At times he went for months without a shower. At other times he was forced to disimpact himself in front of twenty inmates. At one point, the stench created by the lack of accessible hygiene facilities was so unbearable that fellow inmates at Corrigan Correctional Institute signed a petition requesting that the correctional officers stop this inhumane treatment.

Hicks was also repeatedly subjected to dangerous conditions caused by inappropriate and unsafe transport. The officials responsible for transporting him appeared to have no training or experience in handling individuals with mobility impairments. They repeatedly transported him without the proper safety precautions. On March 10, 1997, while Hicks was returning from a court appearance, correctional officers failed to secure him in his wheelchair. While the officers were pushing the wheelchair over an architectural obstruction rather than using the wheelchair-accessible route, they caused Hicks to be thrown from his wheelchair, and he fractured his right leg.

Finally, Hicks was often segregated from other pre-trial detainees and denied participation in many of the correctional facilities' educational programs, recreational activities and religious services. No efforts were made to accommodate his requests to participate or to make these programs accessible to him.

### III. *Discussion*

#### A. *Sovereign Immunity*

The State Defendants argue that application of Title II of the ADA, 42 U.S.C. §§ 12131–12165 (1999), which prohibits discrimination in public services, and the Rehabilitation Act to state prison operations is unconstitutional because those acts are not authorized under either section 5 of the Fourteenth Amendment (the "Enforcement Clause") or the Commerce Clause. Further, the State Defendants argue that even if the ADA and the Rehabilitation Act were passed pursuant to a valid exercise of congressional power, they violate the Tenth Amendment under *Printz v. United States,* 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), and *New York v. United States,* 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992), because they are examples of the federal government compelling the States to enact or administer a federal regulatory program. The court concludes that Title II of the ADA is valid under the Enforcement Clause, that the Rehabilitation Act is valid under the Enforcement Clause and also that there is provided for an express Eleventh Amendment waiver by recipients of federal funds under the Act, that neither Title II of the ADA nor the Rehabilitation Act violate the Tenth Amendment, and that the Commerce Clause issue need not be reached.

In *Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Court set forth a two-prong test for determining when Congress may abrogate the states' sovereign immunity: (i) Congress must have unequivocally expressed its intent to abrogate the immunity, and (ii) Congress must have acted pursuant to a valid exercise of power. *Id.* at 55, 116 S.Ct. 1114.

As to part one of that test, it is undisputed that Congress unequivocally expressed its intent to abrogate the states' sovereign immunity under both the ADA and the Rehabilitation Act. *See* 42 U.S.C. § 12202 (1999) (noting that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of the requirements of this chapter"); 42 U.S.C. § 2000d–7(a)(1)(1999)("A State shall not be immune under the Eleventh Amendment of the Constitution of the

United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C.A. § 794], ... or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.").

(1) *Title II of the ADA and the Enforcement Clause*

In *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 118 S.Ct. 1952, 1954, 141 L.Ed.2d 215 (1998), the Supreme Court held that the ADA applies to state prisons. However, the Court expressly declined to rule on the question of whether application of the ADA to state prisons is a constitutional exercise of Congress' legislative power, either under section 5 of the Fourteenth Amendment or the Commerce Clause. *See Yeskey*, 118 S.Ct. at 1956. Section 5 of the Fourteenth Amendment states: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." Prior to the Court's ruling in *Yeskey*, four circuits had ruled on the question of whether Congress acted within its section 5 powers when it passed the ADA. The Fifth, Seventh, Ninth, and Eleventh Circuits all held that the ADA was properly enacted pursuant to Congress' enforcement powers. *See Crawford v. Indiana Dep't of Corrections*, 115 F.3d 481, 487 (7th Cir.1997); *Clark v. State of California*, 123 F.3d 1267, 1270 (9th Cir.1997); *Coolbaugh v. Louisiana*, 136 F.3d 430, 438 (5th Cir. 1998); *Kimel v. Florida Bd. of Regents*, 139 F.3d 1426, 1433 (11th Cir.1998).

Since the Court's ruling in *Yeskey*, three circuits have ruled on this issue, and they are split. The Second and Fourth Circuits have held that the enactment of the ADA was within Congress' section 5 power. *See Muller v. Costello*, 187 F.3d 298, 308–309 (2d Cir.1999); *Amos v. Maryland Dep't of Pub. Safety and Correctional Servs.*, 178 F.3d 212, 222–23 (4th Cir.1999).[1] The Eighth Circuit held that extension of Title II of the ADA to the states exceeded Congress' authority under section 5 of the Fourteenth Amendment. *See Alsbrook v. City of Maumelle*, 184 F.3d 999, 1007–1008 (8th Cir.1999) (en banc).[2]

In addition, a majority of district courts that have addressed the issue have ruled that Congress acted within its power under section 5 of the Fourteenth Amendment in enacting the ADA. *See, e.g., Martin v. State of Kansas*, 978 F.Supp. 992, 998 (D.Kan.1997); *Williams v. Ohio Dep't of Mental Health*, 960 F.Supp. 1276, 1282 (S.D.Ohio 1997); *Mayer v. University of Minnesota*, 940 F.Supp. 1474, 1480 (D.Minn.1996); *Niece v. Fitzner*, 941 F.Supp. 1497, 1504 (E.D.Mich.1996); *Armstrong v. Wilson*, 942 F.Supp. 1252, 1262 (N.D.Cal.1996) *aff'd on other grounds*, 124 F.3d 1019 (9th Cir.1997). A handful of district courts, however, have held that Congress exceeded its power under section 5 when it passed the ADA. *See, e.g., Kilcullen v. New York State Dep't of Transp.*, 33 F.Supp.2d 133 (N.D.N.Y.1999); *Hedgepeth v. State of Tennessee*, 33 F.Supp.2d 668 (W.D.Tenn.1998); *Garrett v. Board of Trustees of the Univ. of Alabama*, 989 F.Supp. 1409 (N.D.Ala.1998); *Nihiser v. Ohio Envtl. Protection Agency*, 979 F.Supp. 1168 (S.D.Ohio 1997).

---

**1.** The Fourth Circuit, in *Brown v. North Carolina Division of Motor Vehicles*, 166 F.3d 698, 708 (4th Cir.1999), found the State immune from a *regulation* promulgated by the Department of Justice pursuant to the ADA prohibiting public entities from charging a fee to cover costs of accessibility programs. In *Amos*, a different panel of the Fourth Circuit found that *Brown* did not control because it addressed only the constitutional authority of a *regulation* promulgated under the ADA and not the ADA itself. *See Amos*, 178 F.3d at 221 n. 8.

**2.** The Eighth Circuit, en banc, had previously affirmed by an evenly divided vote a district court's finding that the employment discrimination provisions contained in Title I of the ADA were a constitutional exercise of Congress' section 5 power. *See Autio v. AFSCME, Local 3139*, 157 F.3d 1141 (8th Cir.1998) *aff'g en banc Autio v. State of Minnesota*, 968 F.Supp. 1366, 1371–72 (D.Minn.1997).

The Second Circuit's decision in *Muller*, of course, is binding upon this court. The court notes that *Muller* addressed only the employment discrimination provisions of the ADA, i.e., Title I, and did not address Title II of the ADA, the particular title at issue in this case. *See Muller*, 187 F.3d at 308 n. 2 ("Because the issues raised in this case implicate only the employment discrimination provisions of the ADA, we have no occasion to consider the constitutionality of its public services or public accommodations provisions."). However, *Muller* did address the applicability of the ADA to a defendant state department of corrections, and its reasoning as to why Title I is constitutional is directly applicable to the instant case.

In *Muller*, the court noted the following: Section 5 of the Fourteenth Amendment empowers Congress to enact "appropriate legislation" to "enforce" its substantive provisions, including the Equal Protection Clause. A statute is "appropriate legislation" to enforce the Equal Protection clause if "it is plainly adapted to that end and [if] it is not prohibited by but is consistent with the letter and spirit of the [C]onstitution." *Katzenbach v. Morgan*, 384 U.S. 641, 651, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966) (quotation omitted). In *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the Court explained that the authority to enforce the Fourteenth Amendment is a broad power to remedy discrimination and prevent future discrimination, *see id.* at 517–18, 536, 521 U.S. 507, 117 S.Ct. 2157, and that Congress can prohibit activities that are not themselves unconstitutional in furtherance of its remedial scheme. *See id.* at 518, 529–30, 521 U.S. 507, 117 S.Ct. 2157. It stressed, however, that Congress's power under § 5 must be linked to constitutional injuries and there must be a "congruence and proportionality" between the harms to be prevented and the statutory remedy. *Id.* at 520, 521 U.S. 507, 117 S.Ct. 2157. 187 F.3d at 308. It then went on to analyze whether Title I of the ADA was a "propor-

tionate and congruent response to the discrimination Congress sought to prohibit." *Id.* at 309–310.

The Court found Congress' finding in paragraph (a)(7) of section 12101 to be particularly significant. In addition, it found persuasive the fact that four other circuits had concluded that the ADA was constitutional. Three of the decisions referred to—*Crawford, Clark* and *Coolbaugh*—address Title II of the ADA and hold that it is constitutional. In *Coolbaugh*, the court considered Congress' findings set forth in section 12101(a) and noted that the court must give those findings substantial deference.

▪ Thus, both the weight of authority in the circuits and the rationale for the decision of the Second Circuit in *Muller* support the *conclusion* that Congress acted within its power under section 5 when it passed Title II of the ADA.

Because the ADA is valid under the Enforcement Clause, the court need not reach the Commerce Clause question. *See Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng'g, P.C.*, 467 U.S. 138, 157, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984) ("It is a fundamental rule of judicial restraint [ ] that this Court will not reach constitutional questions in advance of the necessity of deciding them."). *See also Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 119 S.Ct. 1923, 1930, 144 L.Ed.2d 161 (1999); *United States v. Leon*, 766 F.2d 77, 78 (2d Cir.1985).

*(2) The Rehabilitation Act*

▪ Congress intended the substantive standards for the Rehabilitation Act to be substantially similar to those for the ADA. Thus, for all the reasons discussed with respect to the ADA, the Rehabilitation Act is also a valid exercise of Congress' authority under section 5 of the Fourteenth Amendment. *See Clark v. State of California*, 123 F.3d 1267, 1269–71. *See also Welch v. Texas Dep't of Highways & Pub.*

*Transp.*, 483 U.S. 468, 472 n. 2, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987) ("The Rehabilitation Act was passed pursuant to § 5 of the Fourteenth Amendment.").

■ Moreover, section 504 is effective only when a state elects to receive federal funds. But when a state elects to receive funds, it explicitly waives Eleventh Amendment immunity. *See* 42 U.S.C. § 2000d–7 (1999). In *Clark*, the court noted as follows:

> Even if Congress has not abrogated a state's immunity under the Eleventh Amendment, a state may waive it. One way for a state to waive its immunity is to accept federal funds where the funding statute "manifest[s] a clear intent to condition participation in the programs funded under the Act on a State's consent to waive its constitutional immunity."

123 F.3d at 1271 (internal citations omitted).

### (3) *The Tenth Amendment*

Generally, Congress may enact legislation pursuant to its enumerated powers. *See, e.g.*, U.S. CONST. art. I, § 8 (the "Enumerated Powers Clause"); U.S. CONST. amend. XIV, § 5 (the "Enforcement Clause"). All other powers are reserved for the states. *See* U.S. CONST. amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States, respectively, or to the people."). The result is a federalist system of dual sovereignty.

■ Two recent Supreme Court decisions have amplified the meaning of our system of dual sovereignty. In *New York v. United States*, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992), the Court held that Congress may not commandeer the states' legislative processes by directly compelling them to enact or administer a federal regulatory program. In *Printz v.*

*United States*, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), the Court held that the federal government may not compel states to implement, enact, enforce or administer, by legislation or executive action, a federal regulatory program. The State Defendants argue that the ADA violates the principles of federalism set forth in *New York* and *Printz* because it is one example of the federal government compelling the states to enact or administer a federal regulatory program.[3]

■ However, the ADA violates neither of the prohibitions set forth in *New York* and *Printz* because Congress neither commandeers the states' legislative processes by directly compelling them to enact or administer a federal regulatory program, as prohibited by the Court in *New York*, nor compels states to implement, enact, or administer, by legislation or executive action, a federal regulatory program, as prohibited by the Court in *Printz*.

The ADA does not require states to pass anti-disability legislation. Moreover, the ADA does not press into federal service state officers and require them to enforce Congressional anti-disability discrimination statutes. The ADA simply requires that state officials abide by the ADA's requirements. As the United States argues, "the ADA is an anti-discrimination civil rights statute that *applies to state prisons* and is not a federal statute to be *administered by state prisons*." (United States' Mem. of Law as Intervenor in Opp'n to Defs.' Mot. to Dismiss at 38.) *See Thompson v. State of Colorado*, 29 F.Supp.2d 1226, 1237 (D.Colo.1998) ("Title II does not compel states to implement or administer a federal regulatory program to remedy or prevent discrimination on the basis of disability. Rather, Title II of the ADA prohibits the State itself from engaging in discrimination on the basis of disability.").

---

**3.** The court notes that neither of the statutes at issue in these cases was enacted pursuant to Congress' power under section 5 of the Fourteenth Amendment. However, it is not necessary to address this point as it does not need to be considered in order to address the State Defendants' arguments.

■ In addition to the foregoing reasons, the Rehabilitation Act survives Tenth Amendment scrutiny as to the State Defendants because states that receive federal funds under the Act contract to be bound by the provisions of that Act and, thus, can not be considered to have been "commandeered" or "compelled" by the federal government.

Therefore, the ADA and the Rehabilitation Act pass both prongs of the *Seminole Tribe* test and neither statute violates principles of federalism. Accordingly, the State Defendants' motion to dismiss based on sovereign immunity should be denied.

### B. *Allegations of State Defendants' Personal Involvement*

The Plaintiff brings the following claims pursuant to 42 U.S.C. § 1983: (i) a Fourth Amendment unreasonable seizure claim, (ii) Fourteenth Amendment procedural due process and substantive due process claims, and (iii) Eighth and Fourteenth Amendment claims for deliberate indifference to basic human needs and deliberate indifference to serious medical needs.

■ The State Defendants argue that the Plaintiff has failed to demonstrate the State Defendants' direct or personal involvement in the actions which are alleged to have caused the Plaintiff's constitutional deprivations, which is a requirement for a § 1983 claim. They cite *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), in the Eighth Amendment context, and argue that "[t]he plaintiff does not allege that the named defendants were present at the time he suffered from any of the medical conditions incidental to his paraplegia as alleged in the

complaint, or that they observed him to be suffering from any untreated medical condition." (Defs.' Mem. [doc # 19] at 16.) The law, however, does not require that a defendant observe or be present at the time of a plaintiff's suffering. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996). In *Colon,* the court summarized the various ways in which supervisory defendants may become "personally involved" in deprivations of constitutional rights:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

58 F.3d at 873. Accepting as true the allegations in the complaint, drawing all reasonable inferences in favor of the Plaintiff, the court can not conclude that the Plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. The State Defendants' motion to dismiss on this basis is therefore being denied.[4]

---

4. The court notes that the parties have not addressed those cases which hold that a pretrial detainee's right to be free from cruel and unusual punishment is protected by the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment. *See Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (stating that the Due Process Clause, not the Eighth Amendment, applies to pretrial detainees); *Ingraham v. Wright,* 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) ("[T]he state

does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment."); *Weyant,* 101 F.3d at 856 (stating that the Eighth Amendment does not apply to pretrial detainees).

## C. *Supplemental Jurisdiction*

Because the Plaintiff's federal claims have survived the motion to dismiss, the State Defendants' motion to dismiss the Plaintiff's state law claim based on the Connecticut Constitution for lack of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) (1999) is being denied.

## D. *Request for Injunctive Relief*

■ The motion to dismiss includes a request that the court dismiss the Plaintiff's claims for injunctive relief as moot. However, the State Defendants have submitted no legal analysis in support of this request. It is well established that defendants bear the burden of demonstrating mootness, and that their burden "is a heavy one." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). "A litigant must demonstrate that it is *'absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.'" *New York State Nat'l Org. for Women v. Terry,* 159 F.3d 86, 91 (2d Cir.1998) (citing *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found. Inc.,* 484 U.S. 49, 66, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987)) (emphasis added).

Thus the State Defendants have failed to meet their burden, and their request that the claims for injunctive relief be dismissed is being denied.

## IV. *Conclusion*

For the reasons set forth above, the State Defendants' motion to dismiss [doc. # 18] is hereby DENIED.

It is so ordered.