William Robert DARE; Gary Petillo, Plaintiffs–Appellees,

v.

State of CALIFORNIA; Dept. of Motor Vehicles, Defendants–Appellants.

No. 97–56065.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 15, 1999.

Decided Sept. 16, 1999.

Angela Sierra, Deputy Attorney General, San Diego, California, for the defendants-appellants.

Andrew R. Hall, Elizabeth Staggs–Wilson, Davis, Wright & Tremaine, Los Angeles, California, for the plaintiffs-appellees.

Mary H. Williams, Assistant Attorney General, Salem, Oregon, for the amicus curiae.

Before: D.W. NELSON, FERNANDEZ, and W. FLETCHER, Circuit Judges.

Opinion by Judge D.W. NELSON; Dissent by Judge FERNANDEZ.

D.W. NELSON, Circuit Judge:

This case involves a challenge under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.* (West Supp.1999) ("ADA"), and its regulations to California's $6 biennial fee for disability parking placards. The State of California, Department of Motor Vehicles [hereinafter "California"], appeals the district court's grant of partial summary judgment in favor of William Robert Dare, Gray Petillo, and the class of plaintiffs they represent. California claims that the fee does not violate the ADA and that a blanket prohibition on such nominal fees is unconstitutional. We disagree and affirm the district court.

### Facts and Procedural History

California has a comprehensive priority parking program for qualifying disabled individuals and veterans. *See* Cal. Veh. Code. §§ 295.5, 295.7 (West 1999). California provides these individuals with extensive priority parking and exemptions

from all parking meter fees and most parking time restrictions. *See id.* §§ 22511.5, 22511.7, 22511.8. To prevent abuse, California limits access to these privileges to vehicles displaying state-issued disability license plates or parking placards. *See id.* §§ 22507.8, 22511.5. California imposes significant fines upon illegal use of disability parking spaces and authorizes local entities to establish enforcement units. *See id.* §§ 4461, 4463(d), 22507.9, 22511.8, 22511.56, 22511.58, 42001.5.

Registered vehicle owners who are disabled themselves or who use their vehicles to transport disabled individuals at least 51% of the time can obtain disability license plates. California charges the standard license plate fees for these special plates. *See id.* §§ 5007(a), 9250. In lieu of or in addition to a disability license plate, California issues disability parking placards to disabled individuals for a $6 fee. *See id.* § 22511.55. Individuals may use these portable placards in multiple vehicles. The placards expire if not renewed every two years, and California charges fees for renewal or replacement. *See id.* § 22511.55(a)(3) & (c)(2). The placard fees partly defray the cost of the disability parking program.

On August 13, 1996, Dare and Petillo, two disabled individuals, filed a class action lawsuit challenging California's $6 placard fee as a violation of ADA Title II and its promulgating regulations. Dare and Petillo allege that the fee constitutes an impermissible surcharge upon measures necessary to provide the nondiscriminatory treatment of individuals and groups required by the ADA. They rely on 42 U.S.C. § 12132, which states that "[s]ubject to the provisions of this subchapter, no qualified individual shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.

§ 12132. To prove the ADA's particular prohibition of surcharges on parking permits, Dare and Petillo cite 28 C.F.R. § 35.130(f), promulgated by the Department of Justice in implementing the ADA, which states that

> [a] public entity may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual with the nondiscriminatory treatment required by the Act or this part.

28 C.F.R. § 35.130(f) (1998).

The district court granted partial summary judgment with respect to the class of people qualifying as disabled under the ADA,[1] found the fee to be an impermissible surcharge, and ordered a permanent injunction against California's imposition of the fee. California timely appeals.

### *Jurisdiction*

■ We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) (West Supp.1999) to review the district court's interlocutory order granting a permanent injunction. Because the district court's partial summary judgment order provides legal authority for the injunction and is thus inextricably bound with it, we also have jurisdiction to review that order. *See Paige v. State of California,* 102 F.3d 1035, 1040 (9th Cir. 1996).

### *Standard of Review*

■ We review for abuse of discretion the district court's grant of a motion for a permanent injunction, *see Gaudiya Vaishnava Soc. v. City of San Francisco,* 952 F.2d 1059, 1062 (9th Cir.1991), but review any determination underlying the grant of the motion by the standard that applies to that determination, *see Multnomah Legal Servs. Workers Union v. Multnomah County Legal Aid Serv.,* 936 F.2d 1547,

1. Specifically, this plaintiff class included all purchasers of California placards since January 26, 1992 and future purchasers who are disabled under the ADA.

1552 (9th Cir.1991). We review de novo a district court's grant of a motion for partial summary judgment. *See Thompson v. Holy Family Hosp.*, 121 F.3d 537, 539 (9th Cir.1997).

### Discussion

This case raises two main issues: (1) Does California's $6 placard fee violate Title II of the ADA and its implementing regulations, and, if so, (2) was Congress's enactment of Title II of the ADA a valid exercise of its power under § 5 of the Fourteenth Amendment to abrogate California's Eleventh Amendment immunity from suit? Because we answer both of these questions in the affirmative, we affirm the district court's grant of partial summary judgment and a permanent injunction against imposition of the placard fee.

### I. Violation of ADA Title II

Analyzing whether California's $6 placard fee violates the ADA requires three inquiries. First, what obligations does Title II impose upon states regarding fees for measures under the ADA? Second, does Public Law 100–641, 23 U.S.C. § 402 (West Supp.1999), which contemplates a fee for disabled parking placards as part of a uniform system for disabled parking, limit states' Title II obligations? Third, are these obligations violated by California's $6 fee for parking placards? As explained below, we conclude that the $6 fee constitutes a surcharge for required measures in violation of the ADA and its implementing regulations.

### A. Obligation under Title II

■ In order to evaluate whether a fee constitutes a surcharge that violates Title II of the ADA, we conduct a two-part inquiry. First, as a threshold matter, we consider whether the measure for which California levies the fee is "required to provide that individual or group nondiscriminatory treatment" as mandated by the ADA. 28 C.F.R. § 35.130(f). If California charges for a measure not required under the ADA, the inquiry ends; 28

C.F.R. § 35.130(f) only forbids surcharges for "required" measures.

Second, we evaluate whether the fee for the measure is a surcharge; in other words, we consider whether it constitutes a charge that nondisabled people would not incur. If nondisabled people pay the same fee for an equivalent service, the charge to disabled people would not constitute a surcharge on a "required" measure. Thus, for example, a state can charge a fee for disabled license plates so long as it charges the same fee for nondisabled license plates.

■ Because surcharges against disabled people constitute facial discrimination, the meaningful access test formulated by the Supreme Court in *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985), does not apply. Under this test, a court considers whether the allegedly discriminatory measure prevents "meaningful access to the benefit that the grantee offers." *Id.* at 301, 105 S.Ct. 712. The Ninth Circuit has applied this test in the ADA context to evaluating whether facially neutral laws violate § 12132. *See Hunsaker v. Contra Costa County*, 149 F.3d 1041, 1042–43 (9th Cir.1998); *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir.1996).

Using this standard in the context of facially discriminatory laws, however, would ignore the clear language of Title II. *Cf. Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 733–35 (9th Cir.1999) (holding that the reasonable modifications test does not apply to facially discriminatory laws because they present per se § 12132 violations). § 12132 covers not only "exclusion from participation in or [denial of] benefits of the services, programs, or activities of a public entity," but also being "subjected to discrimination by any such entity." 42 U.S.C. § 12132. By reviewing all § 12132 claims under a meaningful access test, this Circuit would focus only on exclusions and denials, and ignore completely the discrimination clause, not to mention the explicit

language of the ADA regulation at issue here. Other courts evaluating fees similar to the one at issue here have read the statute and ADA regulation together rather than applying a meaningful access test. *See Thompson v. Colorado,* 29 F.Supp.2d 1226, 1231 (D.Colo.1998); *Thrope v. State of Ohio,* 19 F.Supp.2d 816, 824 (S.D.Ohio 1998); *McGarry v. Director, Dept. of Revenue,* 7 F. Supp.2d 1022, 1028 (W.D.Mo. 1998). We thus follow their approach and do the same; we hold that when states apply charges to required measures, we consider whether these fees constitute a surcharge forbidden under the ADA.

### B. Effect of Public Law 100–641

 The government urges us to view Public Law 100–641 and the regulations promulgated pursuant to it as justifying the placards surcharge. On November 9, 1988, prior to the passage of the ADA, Congress enacted Public Law 100–641, 23 U.S.C. § 402. This law indicates that the Secretary of Transportation shall issue regulations which: (1) establish a uniform system for handicapped parking designed to enhance the safety of handicapped individuals and (2) encourage adoption of such a system by all the states. *See id.*

Pursuant to Public Law 100–641, the Department of Transportation (DOT) promulgated regulations in March 1991, eight months after Congress enacted the ADA. The DOT regulations provide in pertinent part that:

> Special license plates, removable windshield placards, or temporary removable windshield placards displaying the International Symbol of Access shall be the only recognized means of identifying vehicles permitted to utilize parking spaces reserved for persons with disabilities which limit or impair the ability to walk.

23 C.F.R. § 1235.6 (1998). DOT regulations further provide that each state shall issue special license plates upon the application of a person with a disability that impairs the ability to walk and that "[t]he fee for the issuance of a special license plate shall not exceed the fee charged for a

similar license plate for the same class vehicle." *Id.* § 1235.3. In contrast to the provisions concerning license plate fees, neither Public Law 100–641 nor the regulations prohibit the imposition of placard fees.

The government's argument fails, however, because Public Law 100–641 is purely hortatory. *See McGarry,* 7 F.Supp.2d at 1026. Congress enacted Public Law 100–641 two years before the ADA and the law has no enforcement mechanism. Even California concedes that in recognizing principles of federalism and state sovereignty, Congress rendered state compliance with Public Law 100–641 completely voluntary.

 In contrast, the ADA expressly applies to the states through Congress's Fourteenth Amendment powers, as discussed in more detail in Part II. Regulations promulgated pursuant to the ADA bind states so long as the regulations are not arbitrary, capricious, or contrary to the ADA. *See Does 1–5 v. Chandler,* 83 F.3d 1150, 1153 (9th Cir.1996). As discussed below, 28 C.F.R. § 35.130(f) meets that standard. We thus evaluate California's surcharge based on the requirements of Title II and 28 C.F.R. § 35.130(f). Public Law 100–641 does not impact our analysis.

### C. Application to the California Fees

 Applying this approach to the California fee at issue, we find the fee to be a surcharge for a required measure in violation of the ADA. The ADA requires special parking arrangements such as handicapped parking spaces. These spaces allow disabled people equal access to public buildings in which California provides services, programs, and activities. Because California polices handicapped parking spaces, disabled people need placards or license plates to use them. California thus meets the ADA's requirement for nondiscriminatory access to public buildings by providing disabled people with placards and license plates.

Furthermore, California's provision of license plates alone would not be sufficient to give individuals nondiscriminatory access to public places. In addition to the fact that many disabled people may not own cars or have someone who drives them 51% of the time, even those who do may sometimes have to use other vehicles as passengers or as drivers. They may rent cars or wish to drive with another person. To require disabled people to use only a designated car for which they have a license plate restricts them far more in accessing public places than people who lack their disabilities. This reasoning comports with cases by other courts that have struck down fees like the one in California. *See Thompson,* 29 F.Supp.2d at 1231–32; *Thrope,* 19 F.Supp.2d at 825; *McGarry,* 7 F.Supp.2d at 1028.

Because providing the placards is a required measure under California's current program of providing access to handicapped parking spaces, we turn to the question of whether charging the fee for them constitutes a forbidden surcharge. This issue hinges on whether California provides the same fee for an equivalent service for nondisabled people. In support of such equivalence, the appellees argue that the placard fee is comparable to, and probably less than, charges nondisabled people accrue at parking meters. Califor-

nia thus claims that if the $6 fee is viewed as a partial payment of waived meter fees, then disabled people are not being charged more than other people.

California's argument fails, however, because many public places do not have parking meters and people who lack disabilities face no fees in parking at those places. Such a distinction is unacceptable. Charging disabled people for parking that would otherwise be free constitutes discrimination in the provision of access to public buildings, a measure required under the ADA. We thus affirm the district court on this issue and hold that California's fee for handicapped parking placards violates the ADA.

## II. Constitutionality

■ Having established an ADA violation, we turn to the constitutional issues raised by the government. This Circuit has held that in enacting Title II of the ADA, Congress validly abrogated state sovereign immunity pursuant to its Fourteenth Amendment powers. *See Clark v. California,* 123 F.3d 1267, 1270–71 (9th Cir.1997). The majority of Circuits addressing this issue have followed this Circuit's approach in *Clark.*[2]

We continue to adhere to our holding in *Clark* today. In light of the Supreme

---

[2] *Compare Martin v. Kansas,* 190 F.3d 1120, 1125–29 (10th Cir.1999) (holding that the ADA constitutes a proper exercise of Congress' Fourteenth Amendment powers), *Muller v. Costello,* 187 F.3d 298 (2d Cir.1999) (page references not available) (same), *Amos v. Maryland Dept. of Pub. Safety and Correctional Servs.,* 178 F.3d 212, 216–23 (4th Cir. 1999) (same), *Kimel v. State of Fla. Bd. of Regents,* 139 F.3d 1426, 1433 (11th Cir.1998) (same), *Coolbaugh v. Louisiana,* 136 F.3d 430, 432–38 (5th Cir.1998) (same), *cert. denied,* — U.S. ——, 119 S.Ct. 58, 142 L.Ed.2d 45 (1998), *and Crawford v. Indiana Dept. of Corrections,* 115 F.3d 481, 487 (7th Cir.1997), *with Alsbrook v. City of Maumelle,* 184 F.3d 999, 1005–09 (8th Cir.1999) (en banc) (holding that Title II of the ADA was not a valid exercise of Congress's § 5 powers), *and Brown v. North Carolina Div. of Motor Vehicles,* 166 F.3d 698, 702–10 (4th Cir.1999) (holding that forbidding surcharges under the

ADA exceeds Congress' Fourteenth Amendment powers). *See generally Torres v. Puerto Rico Tourism Co.,* 175 F.3d 1, 4–5 (1st Cir. 1999) (failing to reach the issue, in part, because of the dominant precedent upholding Congress's exercise of its Fourteenth Amendment powers in enacting the ADA); *Nelson v. Miller,* 170 F.3d 641, 648 & n. 7 (6th Cir. 1999) (declining to reach this issue, but summarizing the state of the law). We note that the Fourth Circuit has ruled both that the ADA constitutes a proper exercise of Congress's § 5 powers, *see Amos,* 178 F.3d at 221–222 & n. 8, and that the regulation forbidding surcharges exceeds Congress's § 5 authority, *see Brown,* 166 F.3d at 702–10. Because we hold that regulations do not receive an independent constitutional assessment, *see infra* Subsection II.A.2, the Fourth Circuit authority is thus more in accord with than opposing our Fourteenth Amendment analysis.

Court's recent decision in *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank,* —— U.S. ——, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999) [hereinafter *Florida Prepaid*], and the circuit split on this issue, however, we provide further discussion of Title II of the ADA as an appropriate Congressional exercise of its § 5 powers that thus accords with both the Tenth and Eleventh Amendments.

### A. Eleventh Amendment

#### 1. Title II of the ADA

When Congress both expresses unequivocal intent to abrogate immunity and also acts pursuant to its § 5 powers, a state's immunity is waived. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Clark,* 123 F.3d at 1269. As noted in *Clark,* "Congress has unequivocally expressed its intent to abrogate the State's immunity under ... the ADA," 123 F.3d at 1269. The focus of our discussion is therefore on why Title II constitutes a valid exercise of Congress's powers under § 5 of the Fourteenth Amendment.

The Court's recent decision in *Florida Prepaid* clarifies the congruence and proportionality test outlined in *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). The first step of this test involves identification of the "Fourteenth Amendment 'evil' or 'wrong' that Congress intended to remedy," using historical experience as a reference point. *Florida Prepaid,* 119 S.Ct. at 2207 (quoting *City of Boerne,* 521 U.S. at 525, 117 S.Ct. 2157). The second step requires consideration of whether the provisions of the statute are proportional to their remedial or preventive goal. *See id.* at 2210 (quoting *City of Boerne,* 521 U.S. at 532, 117 S.Ct. 2157).

Before applying this test to Title II of the ADA, we note that Congress's enforcement authority is at its apex when fashioning remedies aimed at the core Fourteenth Amendment guarantee of Equal Protection. *City of Boerne* and *Florida Prepaid* both emphasized Congress's power in dealing with discrimination, such as in the voting rights context. *See Florida Prepaid,* 119 S.Ct. at 2207; *City of Boerne,* 521 U.S. at 525–27, 117 S.Ct. 2157. The Court explained that "[l]egislation which deters or remedies constitutional violations can fall within the sweep of Congress' enforcement power even if in the process it prohibits conduct which is not itself unconstitutional and intrudes into legislative sphere of autonomy previously reserved to the States." *Florida Prepaid,* 119 S.Ct. at 2206 (quotation omitted); *City of Boerne,* 521 U.S. at 518, 117 S.Ct. 2157 (internal quotation omitted).

#### a. Congruence

Although disabled people do not constitute a suspect class, the Equal Protection Clause prohibits irrational and invidious discrimination against them. *See City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 439, 446, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). When it enacted the ADA, Congress made specific factual findings of arbitrary and invidious discrimination against the disabled. *See id.* § 12101(a)(7). On the basis of these findings, Congress concluded that the ADA was a necessary legislative response to a long history of arbitrary and irrational discrimination against people with disabilities. *See* 42 U.S.C. § 12101(b).[3] We thus hold that the ADA in general and Title II in particular satisfy the congruence requirement.

---

**3.** A number of cases have held that the ADA constitutes a proper exercise of Congress' Fourteenth Amendment powers with specific reference to Congress's factual findings. *See Muller,* 187 F.3d at 310; *Amos,* 178 F.3d at 218–19; *Kimel,* 139 F.3d at 1433; *Coolbaugh,* 136 F.3d at 435–38; *Crawford,* 115 F.3d at 486–87; *cf.* Timothy Cook, *The Americans with Disabilities Act: The Move to Integration,* 64 Temp. L.Rev. 393, 393–94 & nn. 1–4 (1991) (discussing Congress's extensive fact-finding and the history of state-sponsored irrational discrimination and animus against disabled people).

### b. Proportionality

■ Having established the ADA's congruence with Congress's power to enforce the Equal Protection Clause, we turn to proportionality. In so doing, we reiterate the importance of deference to Congress in this analysis.[4] The Supreme Court has specifically found protections for people with disabilities to be an area in which Congressional judgment should be given great deference. *See Cleburne Living Center*, 473 U.S. at 442–43, 105 S.Ct. 3249.[5] The ADA is thus an appropriate exercise of § 5 powers if Congress enacted it in response to a widespread problem of unconstitutional discrimination that includes state programs and services and if the ADA's provisions are proportional to the scope of that discrimination.[6]

As noted above, Congress made extensive factual findings regarding the widespread arbitrary and invidious discrimination which disabled people face. *See* 42 U.S.C. § 12101(a). The ADA's particular provisions for each sector then indicate specifically the discrimination which is forbidden and the conduct needed to remedy the discrimination. *See* 42 U.S.C. § 12101 *et seq.* Although Title II's provisions may prohibit some State conduct which would pass muster under rational basis review, the Title's focus is on eliminating the discrimination outlined in the factual findings.

We thus agree with the Second Circuit and hold that "[i]n light of Congress's findings of the extent of discrimination against people with disabilities and with due regard to the deference owed to Congress in making such judgments, we will not second-guess Congress's judgment that the ADA was targeted to remedy and prevent irrational discrimination against people with disabilities." *Muller*, 187 F.3d at 309. Congress's findings were sufficiently extensive and related to the ADA's provisions that the provisions can "be understood as responsive to or designed to prevent, unconstitutional behavior." *Florida Prepaid*, 119 S.Ct. at 2210 (quoting *City of Boerne*, 521 U.S. at 532). Therefore, we hold that the ADA was a congruent and proportional exercise of Congress's enforcement powers under § 5 of the Fourteenth Amendment that abrogated Eleventh Amendment immunity.

### 2. Acceptability of 28 C.F.R. § 35.130(f)

■ Although California acknowledges the constitutionality of Title II of the ADA, it claims that the prohibition in 28 C.F.R. § 35.130(f) against states charging even de minimis administrative fees violates the Fourteenth Amendment. We disagree.

■ The primary flaw in the government's approach is that it conducts its Fourteenth Amendment analysis in a

---

**4.** As stated above, the Supreme Court has explicitly indicated that Congress's enforcement power to deter or remedy constitutional violations allows it to prohibit some constitutionally acceptable conduct, even in traditional areas of state autonomy, as part of its larger enforcement effort. *See City of Boerne*, 521 U.S. at 518, 117 S.Ct. 2157 (quoting *Fitzpatrick v. Bitzer*, 427 U.S. 445, 455, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)); *accord Florida Prepaid*, 119 S.Ct. at 2206 (quoting *City of Boerne*, 521 U.S. at 518, 117 S.Ct. 2157).

**5.** Discussing in *Cleburne Living Center* the legal protections to which individuals with developmental disabilities are entitled, the Court noted that "[h]ow this large and diversified group is to be treated under the law is a

difficult and often a technical matter, very much a task for legislators guided by qualified professionals and not by the perhaps ill-informed opinions of the judiciary." *Id.* The Court recently reinforced this approach in *Olmstead v. Zirming*, —— U.S. ——, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999). Although declining to reach constitutional questions, *see id.* at 2181, the Court held that "unjustified isolation ... is properly regarded as discrimination based on disability," *id.* at 2185, and spoke approvingly of the ADA's efforts to end that isolation, *see id.* at 2187.

**6.** We therefore disagree with the Eighth Circuit that the ADA's legislative record must "support the proposition that most state programs and services discriminate arbitrarily against the disabled" for abrogation of immu-

piecemeal manner. Because the statutory scheme as a whole constitutes a proper exercise of Congress' power to legislate under § 5, *see Clark,* 123 F.3d at 1270–71, regulations promulgated pursuant to the ADA "must be given 'legislative and hence controlling weight unless they are arbitrary, capricious, or clearly contrary to the statute.'" *Does 1–5,* 83 F.3d at 1153 (quoting *United States v. Morton,* 467 U.S. 822, 834, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984)).[7]

Here, the regulation is not arbitrary, capricious, or contrary to the ADA. *See id.* Title II protects the rights of disabled people to have the same public services, programs, and activities as those who are not disabled. *See* 42 U.S.C. § 12132. If public entities place a surcharge on measures that help disabled people achieve this parity, disabled people then are paying fees others do not and so are not being treated equally.

Forbidding such additional charges is a solution aimed at preventing this type of discrimination; it addresses the improper approach to funding services for the disabled, *see* 28 C.F.R. § 35.130(f), while leaving states broad flexibility. to administer and fund their programs otherwise, *cf. Duprey v. State of Conn., Dept. of Motor Vehicles,* 28 F.Supp.2d 702, 708 (D.Conn. 1998) ("If the DMV wants to pass on the costs of providing placards, rather than absorbing the costs itself, it must pass the cost on to all parkers, and not just those disabled individuals protected by the

ADA."). The rationale for this regulation thus dovetails neatly with the purposes of Title II. We therefore hold that 28 C.F.R. § 35.130(f) has controlling weight.

### B. Tenth Amendment

■ Because Title II falls within Congress's Fourteenth Amendment powers, it does not conflict with powers reserved to the states under the Tenth Amendment. *See Ex parte Virginia,* 100 U.S. 339, 344–47, 25 L.Ed. 676 (1879); *see also Armstrong,* 124 F.3d at 1024–25. We thus hold that the ADA does not violate the Tenth Amendment.

### Conclusion

The California placard fee violates the ADA and its implementing regulations. Because the ADA constitutes an appropriate exercise of Congress's enforcement powers under § 5 of the Fourteenth Amendment, California's Tenth and Eleventh Amendment challenges fail. Furthermore, we accord 28 C.F.R. § 35.130(f) controlling weight as an regulation promulgated pursuant to the ADA that is not arbitrary, capricious, or contrary to the statute. We therefore AFFIRM the district court's grant of summary judgment in favor of appellees and of a permanent injunction against imposition of the surcharge.

**AFFIRMED.**

---

nity to be appropriate. *Alsbrook,* 184 F.3d 999, 1009–10.

**7.** As the Supreme Court stated in *Olmstead:*

> [b]ecause the Department [of Justice] is the agency directed by Congress to issue regulations implementing Title II, its views warrant respect. We need not inquire whether the degree of deference described in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), is in order; "[i]t is enough to observe that the well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgement to which courts and litigants may properly resort for guidance.'"

—— U.S. ——, 119 S.Ct. at 2186, 144 L.Ed.2d 540 (quoting *Bragdon v. Abbott,* 524 U.S. 624, 642, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (internal quotation and citation omitted)).

In taking this approach, we reject the reasoning of the Fourth Circuit in *Brown,* which determined that "separation of powers, administrability, and federalism" required an examination of "the legality of the specific statute and regulation whose asserted violation by the state government gave rise to the claim for relief in federal court." *Brown,* 166 F.3d at 705. In our view, a piecemeal analysis of the regulations would unduly constrain Congress's power to construct a statutory scheme addressing discrimination; the federal courts, in effect, would have a line-item veto over legislation directed at intentional or arbitrary discrimination by the states.

FERNANDEZ, Circuit Judge, dissenting:

Because I cannot agree that the small fee California charges for placards violates the ADA, I dissent.

California has sought to ameliorate the parking problems that those with disabilities can face when they use automobiles to attend to business, recreation or any of the other pursuits of daily life. To that end, special parking places are set aside and marked for the sole use of disabled people. See, e.g., Cal. Veh.Code §§ 22511.7, 22511.8. In addition, unlimited parking is available in zones in which others may only park for a limited time, and disabled people need not pay parking meter fees. See Cal. Veh.Code § 22511.5. It is one thing, however, to set aside spaces and confer other benefits, but quite another to assume that only disabled people will take advantage of those opportunities. Others may well succumb to the temptation to park in the special spaces, which are generally more convenient to the place one is going and which may well be open when all other desirable spaces are filled. Therefore, California not only has made the spaces available, but also has created a method that helps to assure that the spaces, and other benefits, will remain available for disabled people only.

Under California law, a disabled person who owns a motor vehicle can obtain a license plate, which contains a special symbol—the International Symbol of Access, "commonly known as the wheelchair symbol." Cal. Veh.Code § 5007. As interpreted by the DMV, the license plate is also available to any person who is not disabled, if the vehicle is used to transport a disabled person at least fifty-one percent of the time. There is no charge for the license plate beyond that which is paid by every other person who registers an automobile with the DMV.

California, however, also decided to add more flexibility to the program. It recognized that many disabled persons may be driven by others, who do not do so fifty-one percent of the time, and that it would be beneficial if the other person's automobile could also be parked in the special parking spaces when a disabled person was transported. Therefore, California provided for the issuance of special placards, which are portable and can be used in any automobile that is being driven or utilized by a disabled person. See Cal. Veh.Code § 22511.55; see also Cal. Veh. Code § 22511.56 (misuse of placards). While license plates are issued to every automobile, the special placard is a unique item which is issued to disabled persons only. It, therefore, imposes special costs upon DMV. In order to defray a portion of those added costs, California has imposed a small fee upon those who apply for the placard. That fee is, basically, six dollars every two years. See Cal. Veh.Code §§ 22511.55(a)(2), 22511.55(a)(3). That does not pay for the full cost of issuing placards, and in a typical two-year cycle, 1995–1996, DMV's costs exceeded the fee revenues by $1,182,829. That fee is the subject of this litigation. This case deals with a sensitive area which lies at the border of federal and state relationships. Ours *is* a system of dual sovereignty, and some care must be taken when Congress wishes to have the states carry out congressional policies. The states are not mere adjuncts of the federal government. See, e.g., Printz v. United States, 521 U.S. 898, 917–19, 117 S.Ct. 2365, 2376–77, 138 L.Ed.2d 914 (1997). That broods over this case as we undertake the task of deciding whether California violated the ADA when it enacted a placard fee, which amounts to twenty-five cents per month. Dare argues that it did. If so, and if Congress could constitutionally prohibit that, the district court's decision must be upheld. California attacks both parts of that conjunctive sentence. Because I agree that the ADA was not violated, I see no need to consider the more thorny constitutional portion of the sentence. But that is getting slightly ahead of the story, for I should start with the ADA itself.

That statute, as relevant here, provides that "Subject to the provisions of this sub-

**1178**

chapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. On its face, it would not seem that the fee in question here can be said to, somehow, deny disabled people the benefit of any services offered to the public by California, or that it can be said to discriminate against them. But, of course, the bare words of the statute are not the only law in this area.

The United States Department of Justice is responsible for interpreting and implementing that provision of the ADA. *See* 42 U.S.C. § 12134. It has issued various regulations and guidelines. In explaining its understanding of the requirements of the ADA, the DOJ has stated that "a public entity should provide an adequate number of accessible parking spaces in existing parking lots or garages over which it has jurisdiction." 28 C.F.R. Pt. 35 App. A at 457. There is no dispute that California has provided special parking places for disabled persons with vehicles.

The dispute in this case is over whether California has violated a DOJ regulation, which provides that:

A public entity may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the cost of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part.

28 C.F.R. § 35.130(f); *see also* Americans with Disabilities Act, DOJ Technical Assistance Manual (Title II), Section II—3.5400. I would hold that California has not violated that provision.

Certainly, California has not, in as many words, excluded disabled persons from any program generally offered to the public. If a failure to make special parking places available could be said to exclude them from the use of some other program, Cali-

fornia has not failed to provide for the spaces themselves. No doubt the spaces are available in the sense that they have been set aside. California, however, has sought to assure that those who are not disabled will not use the spaces. No doubt, its method of doing so can inhibit use by a disabled person because the only rational way to provide the extra assurance is to police usage by placing some sort of special symbol on the parked automobile. Even that is not a perfect solution, of course, because people could use counterfeit permits or otherwise abuse the program. *See* Cal. Veh.Code §§ 4463, 22511.56. Nevertheless, that it does help cannot be doubted.

Under the ADA, as it relates to the issues before us, the most that California is required to do is make accessible parking places available at public facilities. *See* 28 C.F.R. § 36.304(a)(18). That, of course, does not, itself, even require special designation or signing. In fact, one could conceive of a situation where all spaces in a parking area were quite accessible. At any rate, there is no claim that California has not made spaces available. In fact, it has gone far beyond that and has provided for overtime parking in zones limited for everyone else and for free metered parking. *See* Cal. Veh.Code § 22511.5.

Nothing in the law requires that California police usage of the spaces in order to assure that only disabled people are taking advantage of them. Indeed, if the federal government decided that usage must be policed by the states, that would come at least parlously close to an attempt to "commandeer state government" into enforcing a federal government policy at state cost. *See Printz*, 521 U.S. at 927, 117 S.Ct. at 2381. No doubt the provision of spaces has many costs, not the least of which is the expense of setting aside and signing special spaces, perhaps larger than normal, which may go unutilized a good part of the time, and which surely have less usage than other parking spaces. I,

of course, need not address those costs. California has willingly accepted them.

California has also accepted the cost, if any, of issuing special license plates for disabled persons who have their own vehicles, which need to be parked, as well as for those who transport disabled people most of the time. *See, e.g.,* Cal. Veh.Code § 5007. I need not decide whether California could impose a charge for that enhancement of the parking program because, again, California has not sought to do so. In that regard, however, it is interesting to note that Congress passed a statute designed to "encourage" states to adopt a uniform system for handicapped parking. *See* Act of Nov. 9, 1988, Pub.L. No. 100–641, 102 Stat. 3335 § 3 (1988) (Handicapped Parking System Provision (HPS)). It did so before the enactment of the ADA, but at a time when the Rehabilitation Act of 1973 was in effect. *See* 29 U.S.C. § 701–796*l.* At that point, Congress indicated that a uniform policy should provide for special license plates for which there should be no charge. *See* HPS § 3(b)(1)(B) & (D). It also indicated that the uniform policy should provide for placards. *See* HPS § 3(b)(1)(C). However, Congress did not indicate that no fee should be charged for placards. The regulations under the HPS are also to the same effect. *See* 23 C.F.R. §§ 1235.3, 1235.6. These hortatory suggestions by Congress might be one reason that California has not chosen to impose a fee for the special license plates. It also suggests that Congress did not see anything particularly discriminatory in the exaction of a small fee for the issuance of placards, if any were issued at all.

As it is, California has decided to confer upon disabled people the still further benefit of a system under which they can drive or be driven in any automobile at all, and still use the special parking places, as well as take advantage of other special parking benefits. That is, California did set up an optional flexible placard program. That complemented the already optional enforcement program which was designed to assure that spaces would not only be provided, but also that they would remain available. As I see it, nothing in the ADA or the regulations precludes California from making a small charge for those additional benefits.

I, of course, recognize that a disabled person can argue that he does not really care at all about having a vigorous enforcement program, which greatly enhances the opportunities of all disabled people to use the special parking places, and even helps make it possible to confer still further parking privileges upon them. In other words, a disabled person could say, "Fine, just set aside and mark the spaces, but do not force any additional benefits upon me, even at a nominal cost." I do not see any reason to believe that Congress did, or that California or we need to, take that kind of reasoning seriously.

Moreover, I fail to see how a charge of twenty-five cents per month, which accords all of those benefits above and beyond the bare provision of spaces, can be dubbed a violation of the ADA on the theory that the costs of state programs that are required to preclude discriminatory treatment have been placed upon disabled persons. No cost of a generally available program has been so levied; rather an expanded ability to use the special parking spaces has been afforded. With or without enhancement, the spaces remain, and even they are one step removed from any particular state program as such.

In short, the placard enhancement allows for great flexibility in the use of the special spaces, affords even further parking opportunities, and helps assure that the spaces will actually be available for those who need them. The fact that a disabled person, who does not have a car of his own or a car which is used for disabled people most of the time, needs to pay what amounts to twenty-five cents per month to be able to use the special spaces does not put the cost of the parking space program upon him; it only visits a minute

part of the cost of the enhancement upon him.

That being said, what of the district court cases which are to the contrary? *See Thompson v. Colorado,* 29 F.Supp.2d 1226, 1231–32 (D.Colo.1998); *Duprey v. Connecticut,* 28 F.Supp.2d 702, 709–11 (D.Conn.1998); *Thrope v. Ohio,* 19 F.Supp.2d 816, 824–25 (S.D.Ohio 1998); *McGarry v. Director, Dep't of Revenue,* 7 F.Supp.2d 1022, 1027–29 (W.D.Mo.1998). Those cases appear to presume either that some form of enforcement is required, or that the state has chosen to enhance the availability of spaces and that is the state's problem. *See, e.g., Thompson,* 29 F.Supp.2d at 1232; *Duprey,* 28 F.Supp.2d at 709. As already noted, I see no violation centered on the fact that a state has exacted a small charge for the purpose of enhancing the benefits available to disabled persons beyond those absolutely required by law. I, therefore, do not accept that particular form of reasoning. The district court cases also note that without placards the program could not be as flexible as it is because, for example, a disabled person who is being driven in another person's car could not confer the right to park in a special space upon the driver. *See, e.g. Thrope,* 19 F.Supp.2d at 825; *McGarry,* 7 F.Supp.2d at 1028. Moreover, they say, a disabled person may wish to rent or borrow a car, which did not have a special license plate, and would not have access to a special space in that instance. And, they say, free license plates do not help in those regards.[1] *See id.* Again, that puts the cart before the horse. It assumes that the state must not only make spaces available, but also provide for all possible permutations of desire to use those spaces, without asking for any fee to help defray the cost of the enhanced usage possibilities. I see no persuasive basis for that assumption. It simply fails to recognize that the states are not discriminating against disabled people when they undertake to police the use of spaces, nor are they discriminating when they ask for a small fee to enable them to do that policing in an efficient fashion. There is, by the way, nothing before us to suggest that the fee exceeds that which the DMV charges other people for services it performs for them, or that the fee is in an excessive or discriminatory amount whose design injures disabled people. Far from it. The fee does not even cover the cost of issuing the placards.[2]

In fine, the ADA is an anodyne which serves to assuage some of the sufferings of disabled persons. California does not disagree with that general goal, and insists that it did not deprive disabled persons of any rights when it imposed a nominal fee upon those who sought to obtain parking placards, which provide great flexibility in the use of the special parking spaces that California has already made available. I agree with that assessment of the situation, and determine that the district court abused its discretion when it issued the permanent injunction against the DMV.

In reaching my conclusion, I limit myself to the facts at hand—a fee that comes to twenty-five cents per month to help defray the cost of issuing the placard. I do not reflect upon whether the state could charge a vastly greater sum for the placards. Nor do I consider other programs or fees charged for them. Nor, for that matter, do I consider whether the federal

---

1. It is interesting to note that a somewhat ambiguous opinion letter from the DOJ suggested that a free license plate program was a satisfactory alternative to a placard program. *See* DOJ Opinion Letter from Deval L. Patrick, Assistant Attorney General, Civil Rights Division to Congressman C.W. Bill Young, (Apr. 29, 1996). I, however, do not put any significant weight upon that missive.

2. The best argument against this small and reasonable placard fee is, it seems to me, that there are some disabled people who can drive most cars and who wish to borrow or rent cars from time to time. They are, I believe, the only ones who can reasonably complain at all about the fee in any event. But even if the fee were invalid as applied to them, that would not justify the breadth of the injunction issued by the district court and approved of today.

government can constitutionally impose program costs upon the states in this fashion. As I see it, those issues are, for now, beyond our ken.[3]

Thus, I respectfully dissent.

**3.** It should be pointed out, however, that one Court of Appeals and at least one District Court have declared that an attempt to enforce the surcharge regulation in federal court violates the Eleventh Amendment. *See Brown v. North Carolina Div. of Motor Vehicles,* 166 F.3d 698, 706–08 (4th Cir.1999); *Hedgepeth v. Tennessee,* 33 F.Supp.2d 668, 674–77 (W.D.Tenn.1998); *see also Alsbrook v. City of Maumelle,* 184 F.3d 999, 1009 (8th Cir.1999) (en banc). *But cf., Clark v. California,* 123 F.3d 1267, 1269–71 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2340, 141 L.Ed.2d 711 (1998). Again, I see no need to decide that issue in this case. If I did, I am inclined to agree with those courts rather than with the majority.