PATRICK and Kathy W., on their own behalf and on behalf of their son Andrew W., on his own behalf and on behalf of all children similarly situated, Plaintiffs,

v.

Paul LEMAHIEU, in his official capacity as Superintendent of the Hawaii Public Schools; and Lawrence Miike, in his official capacity as Director of the Department of Health, Defendants.

No. Civ. 98–00843ACK.

United States District Court,
D. Hawai'i.

April 16, 2001.

Stanley E. Levin, Davis Levin Livingston Grande, Honolulu, HI, for plaintiffs.

Russell A. Suzuki, Steven K. Chang, Dept. of Atty. General, Honolulu, HI, for defendants.

Michael Chun, Office of U.S. Atty., Honolulu, HI, for respondent.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS ON THE BASIS OF ELEVENTH AMENDMENT IMMUNITY

KAY, District Judge.

### BACKGROUND

Patrick and Kathy W. are parents of Andrew (collectively "Plaintiffs"), an autistic student certified as eligible for special education services under the Individuals with Disabilities Education Act ("IDEA"). In the spring of 1997, Andrew was enrolled at Pauoa Elementary School. Plaintiffs allege that during the 1997–1998 school year, there was high teacher turnover at the school, uncertified teachers without training in teaching special needs children were supervising Andrew, and that on a regular basis Andrew was improperly restrained by an unsupervised educational assistant ("EA") by means of either tying him to a chair, or rolling him in a blanket. Defendants deny the allegations that Andrew was improperly restrained and contend that Defendants had no knowledge of any use of improper restraints.

At the beginning of the next school year, Andrew was placed at home. The parties dispute whether this placement was agreed upon by Andrew's Individual Education Plan ("IEP") team, or whether it

was a unilateral decision by Plaintiffs. Plaintiffs allege that Andrew was to receive 12 hours a week of tutoring and related services, which were not received.

On October 22, 1998, Plaintiffs filed a Complaint under the IDEA and Section 504 of the Rehabilitation Act against Paul Lemahieu, in his official capacity as Superintendent of the Hawaii Public Schools, and against Dr. Lawrence Miike, in his official capacity as Director of the Department of Health (collectively "Defendants") requesting provision of appropriate education services for Andrew, as well as compensatory and punitive damages. Plaintiffs also filed a Motion for a Temporary Restraining Order on October 22, 1998. The Motion for the Temporary Restraining Order was withdrawn by Plaintiffs on December 14, 1998, after the parties developed an IEP acceptable to both parties[1]. Plaintiffs' filed a First Amended Complaint on November 6, 1998. Plaintiffs claims arise from the incidents that occurred during the 1997–1998 school year and during the commencement of the 1998 school year.

On October 11, 2000, Defendants filed the instant Motion to Dismiss or in the Alternative for Summary Judgment. On November 22, 2000, Plaintiffs filed an Opposition and a Concise Statement of Facts. On November 30, 2000, Defendants filed a Reply and a Concise Statement of Facts. A hearing on the Motion was held December 11, 2000.

On December 15, 2000, this Court DENIED in part and STAYED in part Defendants' Motion. The Court STAYED Defendants' Motion to Dismiss on the basis of Eleventh Amendment immunity, pending the Supreme Court's decision in *University of Ala. at Birmingham Bd. of Trustees v. Garrett*, 529 U.S. 1065, 120 S.Ct. 1669,

146 L.Ed.2d 479 (2000). On February 21, 2001, the Supreme Court issued its decision in *Garrett*. See *Bd. of Trustees of the University of Ala. v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). Pursuant to this Court's Order the parties filed supplemental memoranda regarding the *Garrett* decision. Plaintiffs and Defendants filed Supplemental Memoranda on March 19, 2001 and Reply Memoranda on March 27, 2001. Pursuant to LR 7.2(d), the Court determines that it is appropriate to decide the stayed matter without a hearing. The Court DENIES Defendants' Motion to Dismiss on the basis of Eleventh Amendment immunity.

### STANDARD OF REVIEW

Under Rule 12(b)(6), in determining whether a motion to dismiss for failure to state a claim upon which relief can be granted, this Court must accept as true the plaintiff's allegations contained in the complaint and view them in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Wileman Bros. & Elliott, Inc. v. Giannini*, 909 F.2d 332, 334 (9th Cir.1990); *Shah v. County of Los Angeles*, 797 F.2d 743, 745 (9th Cir. 1986). Thus, the complaint must stand unless it appears beyond doubt that the plaintiff has alleged no facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Balistreri*, 901 F.2d at 699; *Robertson v.*

---

**1.** Andrew is currently enrolled at Loveland Academy, a private school, and his tuition is being paid for by the State.

*Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir.1984).

In essence, as the Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." *De La Cruz v. Tormey,* 582 F.2d 45, 48 (9th Cir.), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979). The Court must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiffs' claims. *Id.*

A motion under Rule 12(b)(6) should also be granted if an affirmative defense or other bar to relief is apparent from the face of the Complaint, such as lack of jurisdiction or the statute of limitations. 2A J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice,* ¶ 12.07 at 12–68 to 12–69 (2d ed.1991 & supp. 1191–92) (citing *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)) (emphasis added).

## I. *ELEVENTH AMENDMENT IMMUNITY*

Plaintiffs' Complaint states a cause of action for damages under Section 504 of the Rehabilitation Act. Case law concerning Title II of the Americans with Disability Act ("ADA") is applicable to cases brought under the Rehabilitation Act because Title II was expressly modeled after Section 504 of the Rehabilitation Act. *See Zukle v. Regents of the University of California,* 166 F.3d 1041 (9th Cir.1999). The provisions of Section 504 and Title II of the ADA are to be interpreted consistently, and the same analysis is to be applied to a claim brought under either. *See Id.*

at 1045 n. 11. Accordingly, the Court considers analysis of States' Eleventh Amendment immunity under Title II of the ADA to be a guide for analysis of the same under the Rehabilitation Act.[2]

Defendants contend that the Ninth Circuit decisions in *Clark v. California,* 123 F.3d 1267 (9th Cir.1997) and *Dare v. California,* 191 F.3d 1167 (9th Cir.1999), *cert. denied,* —— U.S. ——, 121 S.Ct. 1187, 149 L.Ed.2d 103 (2001), holding that Congress validly abrogated the states' sovereign immunity when it enacted Title II of the ADA and the Rehabilitation Act, are no longer binding in light of the Supreme Court decisions in *Kimel v. Florida Board of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) and *Bd. of Trustees of the University of Ala. v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866, (2001). In *Garrett,* the Court held that suits against states seeking monetary damages under Title I of the ADA are barred by the Eleventh Amendment. *See Garrett,* 121 S.Ct. at 960. Recognizing that Title I and Title II consisted of different remedial provisions, the *Garrett* court specifically declined to address whether suits under Title II of the ADA are barred by the Eleventh Amendment. *See Id.* at 960 n. 1. Further, the Rehabilitation Act was not before the Court.

Title I makes it unlawful for the states, in the employment context, to discriminate against qualified individuals with a disability because of the disability of that individual. *See Zimmerman v. Oregon Dept. of Justice,* 170 F.3d 1169, 1172 (9th Cir.1999), *r'hrg. en banc denied,* 183 F.3d 1161 (1999), *cert. denied,* —— U.S. ——, 121 S.Ct. 1186, 149 L.Ed.2d 103 (2001). Title II, and the Rehabilitation Act, however, deal with the services, programs, or activi-

---

**2.** However, the Court notes that the Rehabilitation Act, unlike Title II of the ADA, contains an express waiver of Eleventh Amendment immunity by recipients of federal financial assistance. *See* 42 U.S.C. § 2000d–7; *Clark,* 123 F.3d at 1271.

ties of a public entity. *See id.* at 1172–73; 42 U.S.C. § 12132.

■■■ The Eleventh Amendment bars suit against nonconsenting states. *See Kimel v. Florida Board of Regents,* 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). Congress, however, can abrogate the states' sovereign immunity pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment. *See Garrett,* 121 S.Ct. at 962; *Kimel,* 528 U.S. at 79–80, 120 S.Ct. 631 (holding that Congress does not have the authority to abrogate the states' sovereign immunity under Article I). The Fourteenth Amendment provides, in relevant part, the following:

> Section 1: ... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
>
> Section 5: The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

Section 5 of the Fourteenth Amendment allows Congress to enact legislation and abrogate the states' sovereign immunity to protect the rights guaranteed in Section 1 of the Fourteenth Amendment. *See Garrett,* 121 S.Ct. at 962. Congress's power under § 5 is not unlimited. *See' Garrett,* 121 S.Ct. at 964 ("Congress' § 5 authority is appropriately exercised only in response to state transgressions"); *Clark v. California,* 123 F.3d 1267, 1270 (9th Cir.1997) ("Congress' powers under the Fourteenth Amendment are not unlimited"). Congress may only abrogate the states' sovereign immunity if (1) it unequivocally intends to do so; and (2) it constitutes a valid exercise of power under § 5 of the Fourteenth Amendment. *See*

*Kimel,* 528 U.S. at 73, 120 S.Ct. 631; *Dare,* 191 F.3d at 1174.

■■ It is clear Congress unequivocally intended to waive the states' sovereign immunity under Section 504. *See Clark,* 123 F.3d at 1269–70; *see also, Burns–Vidlak v. Chandler,* 165 F.3d 1257, 1261 n. 6 (9th Cir.1999) (stating "the plain language of the Rehabilitation Act and the Americans with Disabilities Act makes it clear that Congress has unequivocally abrogated the states' immunity from suit in federal court under those statutes"). Courts apply a two-part congruence and proportionality test to determine whether certain legislation is a valid exercise of Congress's power under § 5 of the Fourteenth Amendment. *See City of Boerne v. P.F. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). The first step requires the identification of a wrong that Congress intended to remedy. *See College Savings Bank v. Florida Prepaid Postsecondary Education Expense Bd.,* 527 U.S. 666, 672, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). The second step requires the legislation be proportional between the injury intended to be remedied and the means adopted to achieve the goal. *See City of Boerne,* 521 U.S. at 530, 117 S.Ct. 2157.

The Ninth Circuit, in *Clark* and *Dare* found that Congress enacted the ADA and Rehabilitation Act in response to widespread discrimination against the disabled. Then, applying the congruence and proportionality test, the court held in *Clark,* that Title II of the ADA and the Rehabilitation Act were validly enacted under the Fourteenth Amendment. 123 F.3d at 1270. Moreover, in *Clark,* the court stated "the Rehabilitation Act includes an express waiver of Eleventh Amendment immunity which [the State] accepted when it accepted Rehabilitation Act funds ... [e]ven if Congress has not abrogated a state's immunity under the Eleventh Amendment, a

state may waive it." *Id.* at 1271. The Ninth Circuit thereby held that even in the absence of abrogation of the states' Eleventh Amendment immunity, states that have accepted federal funds are subject to suit under the Rehabilitation Act because they waived their immunity. *Id.* In *Dare v. California*, the Ninth Circuit held that Title II, modeled after Section 504, was congruent and proportional under § 5 of the Fourteenth Amendment, and validly abrogated the states' sovereign immunity. *See Dare*, 191 F.3d at 1175.

The Supreme Court in *Garrett* found that in enacting the ADA, Congress had failed to make findings of a 14th Amendment violation, and that "[e]ven if it were possible to squeeze out [of the legislative record] a pattern of unconstitutional discrimination by the States, the rights and remedies created by the ADA against the States would raise the same sort of concerns as to congruence and proportionality as were found in *City of Boerne*." *Garrett*, 121 S.Ct. at 966. However, the Court declined to address whether Title II of the ADA validly abrogated the states' sovereign immunity stating "[w]e are not disposed to decide the constitutional issue whether Title II, which has somewhat different remedial provisions from Title I, is appropriate legislation under § 5 of the Fourteenth Amendment" and did not address the Rehabilitation Act at all. *Id.* at 960 n. 1. Further, the Court did not address the subject of waiver of Eleventh Amendment immunity. Thus, *Garrett* did not directly reverse the holdings of *Dare* and *Clark*. This Court is bound to follow well established Ninth Circuit precedent.[3]

Based on the above precedent, this Court must deny Defendants' motion to dismiss Plaintiffs' Rehabilitation Act claim.

### CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motion to Dismiss on the basis of Eleventh Amendment immunity.

IT IS SO ORDERED.

---

**3.** The Court acknowledges that the Ninth Circuit's reasoning in *Dare* and *Clark* may be called into question after *Kimel* and *Garrett*, in that the court did not apparently undertake a close scrutiny of the legislative record of the ADA or Rehabilitation Act to determine if Congress made specific findings of irrational discrimination by the States, but instead relied upon Congress' findings of a "widespread problem of unconstitutional discrimination that includes state programs". *See Dare*, 191 F.3d at 1175 (stating "[w]e therefore disagree with the Eighth Circuit that the ADA's legislative record must 'support the proposition that most state programs and services discriminate arbitrarily against the disabled' for abrogation of immunity to be appropriate.") *Id.* at 1175 n. 6; *compare Garrett*, 121 S.Ct. at 966 (stating that Congressional findings of societal discrimination should not be used to infer that there is ongoing discrimination by the States). Additionally, the Ninth Circuit's finding that "Title II's provisions may prohibit some State conduct which would pass muster under rational basis review" raises questions of whether Title II is congruent and proportional upon consideration of *Garrett's* finding that the "reasonable accommodation" requirement and use of "disparate impact" in the ADA (and by analogy, in the Rehabilitation Act) raises proportionality problems. *See Dare*, 191 F.3d at 1175; *Garrett*, 121 S.Ct. at 966–67. Nevertheless, until the Ninth Circuit extends the holding of *Garrett* to include Title II of the ADA and/or the Rehabilitation Act and readdresses the question of waiver, the Court finds that it is bound to follow precedent.